671 S.E.2d 47 (2009)
In the Matter of S.R.G.
No. COA08-954.
Court of Appeals of North Carolina.
January 20, 2009.
*48 Thomas B. Kakassy, P.A., by Thomas B. Kakassy, Gastonia, for Petitioner-Appellee Gaston County Department of Social Services.
Wyrick Robbins Yates & Ponton, LLP, by K. Edward Greene and Tobias S. Hampson, Raleigh, for Respondent-Appellant.
Heather Adams, Raleigh, for Guardian ad Litem.
McGEE, Judge.
Respondent mother J.L.G. appeals from an order terminating her parental rights as to the minor child S.R.G.
When S.R.G. was born in March 2006, she tested positive for cocaine and benzodiazepines. Respondent also tested positive for these drugs, and she admitted she had used cocaine and Ativan during her pregnancy. Gaston County Department of Social Services (DSS) worked with Respondent regarding her substance abuse issues, while allowing S.R.G. to remain with Respondent, who was living with her mother. Respondent *49 tested positive for cocaine multiple times between 19 May 2006 and 16 January 2007. DSS allowed Respondent to place S.R.G. in a kinship placement with Respondent's brother on 31 January 2007, while Respondent attempted to continue addressing her substance abuse issues. Respondent's brother had three children of his own, and he decided after several weeks that he could no longer care for S.R.G. Respondent's drug screen taken on 15 February 2007 again was positive for cocaine. DSS filed a juvenile petition alleging neglect and dependency on 16 March 2007. DSS was granted non-secure custody the same day, and S.R.G. was placed in foster care. Non-secure custody was continued by orders entered on 25 April, 13 July, and 30 July 2007.
The trial court adjudicated S.R.G. neglected and dependant on 24 July 2007 with Respondent admitting the underlying facts regarding her substance abuse. In its order filed 15 August 2007, the trial court ordered a permanent plan of reunification, and it adopted the recommendations in the predisposition report submitted by DSS. Those recommendations were for Respondent to (1) refrain from all use of illegal drugs as evidenced by clean random drug screens; (2) obtain and maintain appropriate independent housing; (3) refrain from violating any laws or committing any crimes; (4) complete parenting classes and demonstrate appropriate parenting skills when visiting with S.R.G.; (5) maintain financial stability by paying all bills on time; (6) maintain regular visitation with S.R.G. during the reunification period; (7) obtain a substance abuse assessment and follow through with all recommendations; (8) complete anger management and mental health assessments; and (9) complete a psychiatric evaluation. The trial court authorized Respondent to have supervised visits with S.R.G. once a week.
DSS filed a review and permanency planning report on 9 October 2007, which detailed Respondent's progress on her case plan. According to the report, Respondent had (1) obtained a substance abuse and mental health assessment; (2) begun treatment recommendations and had partially attended substance abuse classes, but was dismissed from the program for intermittent attendance and showing up under the influence; (3) submitted to random drug screens; (4) demonstrated appropriate parenting skills with S.R.G.; (5) signed necessary releases required by DSS; (6) attended some medical appointments for S.R.G.; (7) had housing with her mother but had not obtained independent housing; and (8) had participated in a family treatment court program. DSS noted that Respondent had not complied with every aspect of her plan, in that (1) she did not maintain employment, although her focus was on substance abuse treatment; (2) she did not follow through with substance abuse treatment recommendations; (3) she was not compliant with family treatment court program; (4) she did not attend visitation on a regular basis; (5) she did not provide DSS with any information on the paternity of S.R.G., as requested; (6) she did not maintain sobriety from illegal drugs; and (7) she lost transportation services from DSS as a result of not being compliant. Respondent continued to use cocaine between 5 June 2007 and 4 October 2007. The findings of this report were considered and adopted by the trial court at the review hearing held on 23 October 2007. The trial court ordered a concurrent plan of adoption and reunification in its order entered on 11 December 2007.
DSS filed a petition for termination of parental rights on 24 October 2007, alleging the following grounds: (1) Respondent neglected S.R.G. N.C. Gen.Stat. § 7B-1111(a)(1). (2) Willful failure to pay a reasonable portion of the cost of care for S.R.G. for the six-month period preceding the filing of the petition despite being physically and financially able to do so. N.C. Gen.Stat. § 7B-1111(a)(3). (3) Willful abandonment of S.R.G. for at least six months immediately prior to the filing of the petition. N.C. Gen. Stat. § 7B-1111(a)(7). Respondent filed an answer denying the material allegations of the petition and seeking to have the petition dismissed. The motion to dismiss was denied by order entered 28 May 2008.
Another review hearing was held on 15 January 2008. DSS submitted a report stating that Respondent was not compliant in meeting her case plan goals in that she continued *50 to use illegal drugs and test positive in her drug screens, she continued illegal activities, she attended substance abuse treatment intermittently, and she was not compliant with transportation services and lost those services on two occasions. The trial court continued the concurrent plan of adoption and reunification in its order entered on 6 February 2008. After a review hearing held on 8 April 2008, the trial court changed the permanent plan to adoption.
A termination of parental rights hearing was held on 21 May 2008. Respondent testified extensively regarding her struggle to overcome her substance abuse issues, and she admitted to using cocaine throughout 2007, as evidenced by numerous positive drug screens. She stated she knew she needed to stop using illegal drugs in order to get S.R.G. back, and that she had a limited time to prove herself to DSS and the court. She stated she had attended 11 of 25 scheduled visitations with S.R.G. between March and October 2007.
DSS social worker Mandy Schmitt (Ms. Schmitt) testified that she became involved in the case in March 2007 when S.R.G. came into DSS custody. Ms. Schmitt and Respondent entered into a case plan on 11 May 2007. Respondent exercised her visitation rights and attended review meetings only sporadically in the Spring of 2007. Respondent had continuous problems securing transportation to the meetings and visitations. Ms. Schmitt testified that the majority of Respondent's missed visits with S.R.G. occurred toward the beginning of the case from March 2007 onward, and that as of December 2007, Respondent began visiting more regularly. Although Ms. Schmitt repeatedly informed Respondent about how to get back into her substance abuse treatment, Respondent did not resume treatment until August 2007. Even then, she continued to test positive for cocaine.
After all the evidence, the trial court found as its sole basis for termination of Respondent's parental rights that Respondent willfully abandoned S.R.G. in the six months preceding the filing of the termination petition. The trial court then considered various factors regarding the best interests of S.R.G., determined that termination was in the best interests of S.R.G., and ordered that Respondent's parental rights be terminated. The trial court entered its findings and conclusions in an order filed on 28 May 2008. From the order entered, Respondent appeals.
Proceedings to terminate parental rights are conducted in two parts: (1) the adjudication phase, governed by N.C. Gen. Stat. § 7B-1109 and (2) the disposition phase, governed by N.C. Gen.Stat. § 7B-1110. In re Baker, 158 N.C.App. 491, 581 S.E.2d 144 (2003). "`The standard of review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law.'" In re Shepard, 162 N.C.App. 215, 221-22, 591 S.E.2d 1, 6 (2004) (quoting In re Clark, 72 N.C.App. 118, 124, 323 S.E.2d 754, 758 (1984)). Findings of fact supported by competent evidence are binding on appeal even though there may be evidence to the contrary. In re Williamson, 91 N.C.App. 668, 674, 373 S.E.2d 317, 320 (1988). Once a trial court has determined that at least one ground exists for termination, the trial court then decides whether termination of parental rights is in the best interest of the child. N.C. Gen.Stat. § 7B-1110; In re Shermer, 156 N.C.App. 281, 285, 576 S.E.2d 403, 407 (2003).
Respondent first argues the trial court erred because the language in the termination order finding a ground for terminating her parental rights shows that the trial court improperly found she failed to make reasonable progress pursuant to N.C. Gen.Stat. § 7B-1111(a)(2), a ground which was not alleged in the termination petition filed by DSS. Respondent contends that since she did not have notice of this ground, the trial court erred in using N.C. Gen.Stat. § 7B-1111(a)(2) as a basis to terminate her parental rights. As Respondent correctly points out, N.C. Gen.Stat. § 7B-1111(a)(2) may not be used as a ground for terminating her parental rights in this case, as this ground was not alleged in the termination petition. In re C.W., 182 N.C.App. 214, 228-29, 641 S.E.2d 725, 735 (2007) ("Because it is *51 undisputed that DSS did not allege abandonment as a ground for termination of parental rights, [the] respondent had no notice that abandonment would be at issue during the termination hearing. Accordingly, the trial court erred by terminating [the] respondent's parental rights based on this ground.").
In the alternative, Respondent argues that the trial court erred in terminating her parental rights pursuant to N.C. Gen.Stat. § 7B-1111(a)(7), or willful abandonment of S.R.G. for the six-month period prior to filing the termination petition.
The trial court's conclusion from the adjudicatory portion of its order states that Respondent
has willfully abandoned the Juvenile, [S.R.G.], for at least six consecutive months immediately filing the Petition herein, in that the Juvenile has been in the custody of the Petitioner since January 17, 2007, and has at no time since that date been reunited with the Respondent Mother, and that during that time Respondent has willfully and unreasonably failed to meaningfully cooperate with efforts of reunification by failing to demonstrate, for any significant period, that she is willing to follow the treatment protocols and recommendations of her Case Plans and stop using illegal drugs.
This language appropriately tracks the statutory language in N.C. Gen.Stat. § 7B-1111(a)(7) regarding willful abandonment as a ground for termination of parental rights, a ground which was alleged in the petition filed by DSS. Thus, even though neither the termination petition nor the termination order specifically cites to subsection (a)(7), the trial court correctly used a ground alleged in the petition as its basis for terminating Respondent's parental rights. We note that the language used by the trial court also tracks in some relevant part the language of N.C. Gen.Stat. § 7B-1111(a)(2) (2008), which states:
The parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile. Provided, however, that no parental rights shall be terminated for the sole reason that the parents are unable to care for the juvenile on account of their poverty.
To show willful abandonment pursuant to N.C. Gen.Stat. § 7B-1111(a)(7), DSS must present evidence that Respondent willfully abandoned S.R.G. for at least six consecutive months prior to the filing of the termination petition. Since the termination petition was filed on 24 October 2007, the determinative period in this case is 24 May 2007 to 24 October 2007. "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child" In re Adoption of Searle, 82 N.C.App. 273, 275, 346 S.E.2d 511, 514 (1986) (citation omitted). Willfulness is "more than an intention to do a thing; there must also be purpose and deliberation." Id. "Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence." Id. at 276, 346 S.E.2d at 514.
In the case before us, the trial court made the following relevant findings of fact: (1) Respondent failed to attend the permanency mediation session on 19 June 2007, the hearing regarding need for continued non-secure custody on 26 June 2007, and the permanency planning hearing on 23 October 2007. (2) Respondent did attend the 24 July 2007 adjudicatory hearing on the neglect/dependency petition. (3) Respondent failed to reasonably and substantially comply with requirements of her case plan between 24 July and 23 October 2007. At no time was Respondent's compliance sufficient to allow her to exercise unsupervised custodial care of S.R.G. Respondent was only allowed supervised visitation at DSS. (4) Respondent failed to comply with substance abuse treatment between 24 July and 23 October 2007, and she "disappeared" without notice for periods of time. (5) Respondent failed to demonstrate consistent reasonable progress in dealing with her substance abuse problem. (6) Respondent attended 11 of 26 scheduled visits with S.R.G. between 24 July and 23 October 2007. (7) Respondent "did provide appropriate clothes, *52 presents, toys, and holiday clothes" for S.R.G. during visitations. (8) The trial court found Respondent's testimony regarding her desire to be with S.R.G., and the causes and frequency of her drug use "wholly without credibility". [R. pp. 143-44]
In deciding whether the trial court erred in terminating Respondent's parental rights pursuant to N.C. Gen.Stat. § 7B-1111(a)(7), we find it helpful, after a thorough review of termination opinions based upon this statute, to compare two opinions most closely tracking the facts in the case before us. In In re K.B., 2006 WL 1529667, 2006 N.C.App. Lexis 1173 (June 6, 2006), unpublished opinion reported at 177 N.C.App. 810, 630 S.E.2d 256 (2006), our Court affirmed the trial court's conclusion that the respondent had willfully abandoned her child pursuant to N.C. Gen. Stat. § 7B-1111(a)(7), even though the respondent had visited K.B. once during the relevant six month period. The K.B. Court listed other opinions in which this Court has found termination proper despite some minimal contact between the respondents and their children during the relevant six month period, and it compared these cases with one in which the respondent's contact with his child was more substantial:

Compare Searle, 82 N.C.App. at 276-77, 346 S.E.2d at 514 (1986) (finding that the respondent's single $ 500.00 support payment during the relevant six-month period did not preclude a finding of willful abandonment) and In re Apa, 59 N.C.App. 322, 324, 296 S.E.2d 811, 813 (1982) ("except for an abandoned attempt to negotiate visitation and support, respondent `made no other significant attempts to establish a relationship with [the child] or obtain rights of visitation with [the child]'") with [Bost v. Van Nortwick, 117 N.C.App. 1, 19, 449 S.E.2d 911, 921 (1994)] (finding no willful abandonment where respondent, during relevant six-month period, visited children at Christmas, attended three soccer games and told mother he wanted to arrange support payments).
K.B., 2006 WL 1529667 at *4, 2006 N.C.App. Lexis 1173 at 12-13; see also In re A.A.H., 2006 WL 2529576, *10-*11, 2006 N.C.App. Lexis 1908, 31-32 (Sept. 5, 2006), unpublished opinion reported at 179 N.C.App. 434, 634 S.E.2d 274 (2006).
We find the Bost opinion, cited in the above quote, is particularly helpful in our decision. In Bost, the respondent's only acts evincing lack of abandonment were four visits with his children, and a statement to the children's mother that he wished to provide monetary support for his children. Our Court held as follows in Bost: "We do not find that [the] respondent's actions evince a settled purpose to forego all parental duties and relinquish all parental claims to the children." Bost, 117 N.C.App. at 19, 449 S.E.2d at 921.
In the case before us, Respondent visited S.R.G. eleven times during the relevant time period. She also brought appropriate toys and clothes for S.R.G. to those visits. Respondent's contacts with S.R.G. during the relevant six month period are more substantial than those in the Bost opinion. Further, the trial court also found as fact that Respondent did participate in one of the trial proceedings during the relevant time period.
In addition, many of the findings of fact made by the trial court for the relevant period are not of great relevance for a determination of willful abandonment pursuant to N.C. Gen.Stat. § 7B-1111(a)(7). For example, evidence that Respondent failed to adequately comply with her case plan and evidence of Respondent's continuing substance abuse during the relevant period are more appropriately considered as a grounds for termination pursuant to N.C. Gen.Stat. § 7B-1111(a)(2). These are failings that do not inherently suggest a willful intent to abandon, as they are subject to other explanations  uncontrolled addiction, for example. See Pratt v. Bishop, 257 N.C. 486, 501-02, 126 S.E.2d 597, 608 (1962); see also In re Matherly, 149 N.C.App. 452, 455, 562 S.E.2d 15, 18 (2002) ("Evidence showing [ ] parents' ability, or capacity to acquire the ability, to overcome factors which resulted in their children being placed in foster care must be apparent for willfulness to attach."); Bost, 117 N.C.App. at 18, 449 S.E.2d at 921 ("Our review of [the] respondent's inability to pay child support due to his dependency on alcohol and related financial problems does not *53 support a finding of willful abandonment."); K.B., 2006 WL 1529667, *5, 2006 N.C.App. Lexis 1173, 13-14 ("[A]t the time of the hearing, [the respondent] had successfully obtained treatment for substance abuse, maintained stable housing for four years, and `provided clean and appropriate housing and care' for her infant son. [These facts] have little bearing upon the issue of her abandonment of K.B.").
We are hesitant to introduce N.C. Gen.Stat. § 7B-1111(a)(2) factors into consideration for terminating parental rights in this case due to the relatively short six month period required under N.C. Gen.Stat. § 7B-1111(a)(7). A parent's failure to address the necessary requirements laid out in her case plan to regain custody of her child becomes more relevant to any finding of willful abandonment the longer the parent fails to act. The General Assembly has determined a parent willfully leaving her child in the custody of DSS for a twelve month period is a reasonable and sufficient ground for termination where the parent has failed to show "to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2). We do not believe the General Assembly intended the same factors relevant to termination pursuant to N.C. Gen.Stat. § 7B-1111(a)(2), which requires a twelve month period before filing a termination petition on that ground, to be used as substantive evidence in finding willful abandonment under N.C. Gen.Stat. § 7B-1111(a)(7). A judicial determination that a parent willfully abandoned her child, particularly when we are considering a relatively short six month period, needs to show more than a failure of the parent to live up to her obligations as a parent in an appropriate fashion; the findings must clearly show that the parent's actions are wholly inconsistent with a desire to maintain custody of the child. See Bost, 117 N.C.App. at 19, 449 S.E.2d at 921.
Respondent's conduct of continuing substance abuse and her failure to follow through with her case plan represents poor parenting, at the least, and may be grounds for termination of her parental rights pursuant to N.C. Gen.Stat. § 7B-1111(a)(2). However, her actions during the relevant six month period do not demonstrate a purposeful, deliberative and manifest willful determination to forego all parental duties and relinquish all parental claims to S.R.G. pursuant to N.C. Gen.Stat. § 7B-1111(a)(7). Therefore, we hold the trial court erred in the adjudication portion of the termination proceeding by finding grounds to terminate Respondent's parental rights pursuant to N.C. Gen.Stat. § 7B-1111(a)(7). We thus reverse and remand to the trial court for further action consistent with this opinion.
Reversed and remanded.
Judges ELMORE and STROUD concur.