STEPHENS, Judge.
Respondent-mother ("Respondent") appeals from an order terminating her parental rights to her minor children, Ava and Jacob .[1] Specifically, Respondent contends that because its conclusions were not supported by sufficient findings of fact based on clear, cogent, and convincing evidence, the district court erred in concluding that her parental rights should be terminated based on the grounds of dependency, neglect, and failure to make reasonable progress to correct the conditions that led to the removal of the children from her care. After careful consideration, we hold that the district court's findings of fact support its conclusion to terminate Respondent's parental rights on the ground of dependency, and we consequently affirm the court's order.
I. Facts and Procedural History
Respondent has an extended history with the Mecklenburg County Department of Social Services, Youth and Family Services ("DSS"). In July 2008, at the age of fourteen, she was placed by her maternal grandmother in a therapeutic foster home. While in foster care, Respondent became pregnant and gave birth to both of her children.
On 26 August and 11 October 2010, DSS obtained nonsecure custody of Ava and Jacob, and filed petitions alleging they were dependent juveniles. Respondent and DSS then agreed to an age-appropriate mediated family services case plan, which required Respondent to: (1) work toward independent living; (2) continue with her counseling and follow all recommendations; (3) develop parenting skills with the assistance of her foster parents and, if determined to be useful in the future, attend and complete parenting classes; (4) complete her education or obtain a GED; (5) obtain employment once she left school or foster care; (6) obtain housing once she left foster care; (7) attend her children's medical appointments when able; and (8) stay in contact with her social worker and the guardian ad litem.By order entered 2 December 2010, the district court adjudicated Ava and Jacob to be dependent juveniles. The court approved the placement of the children in the same foster home as Respondent, adopted the mediated family services agreement, ordered DSS to work toward reunification of the children with Respondent, and ordered Respondent to comply with the family services agreement focusing on her education.
After a review hearing on 10 February 2011, the district court entered an order in which it found that Respondent had plans to pursue her GED and was participating in individual therapy. The court further found that Respondent was, with the foster parents' oversight, doing well in providing care for her children. Respondent was to begin developing independent living skills, and the court directed DSS to develop a transitional independent living plan for Respondent.
By 15 June 2011, Respondent was pursuing her GED. Respondent continued participating in individual therapy and provided care for her children with the oversight of her foster parents. The district court ordered DSS to implement the recommendations of Respondent's psychological evaluation, which included intensive in-home therapy, extensive sex education, and parent training.
The district court held a permanency planning hearing on 25 August 2011, from which it entered an order continuing Ava and Jacob in DSS custody and setting their permanent plan as reunification with Respondent. The court found that DSS had arranged for Respondent to continue living with the foster parents under an extended foster care arrangement, because Respondent would age out of DSS custody in September 2011. The court also found that Respondent was participating in independent living activities, individual therapy, and parenting classes, and had just begun involvement with the Cabarrus County Vocational Rehabilitation program. The district court adopted DSS's recommendations and directed DSS to add an educational component to Respondent's independent living plan. Respondent was ordered to continue to follow up with her therapy, independent living skills and activities, parenting classes, and other components of her case plan.
By 1 December 2011, Respondent had engaged in the vocational rehabilitation program and was awaiting a work assignment. Respondent was found to be doing very well in caring for her children, but only with the support of the foster parents. Respondent continued to be engaged with therapy and her independent living and in-home parenting activities. DSS explored housing options for Respondent and advocated for housing vouchers for Respondent and her children. The district court continued the permanent plan for the juveniles as reunification with Respondent and directed Respondent to "move forward" with vocational rehabilitation, housing, and obtaining her GED.
Over the next several months, Respondent continued living with her children and the foster parents and participating in her family services case plan. Nevertheless, at a home visit on 15 March 2012, DSS expressed serious concerns that while Respondent was compliant with her placement and continued to work on her case plan, she had made no progress on being able to independently parent her children. In October 2012, Respondent obtained a part-time job at TJ Maxx, but earned little money and failed to consistently save any of her wages to pay for her children's needs despite the court's order that she establish a bank account and deposit no less than half of each paycheck therein.
On 24 June 2013, the district court held another permanency planning hearing. In its order from the hearing entered 23 July 2013, the court concluded that Respondent had made insufficient progress on her family services case plan and changed the permanent plan for the children to adoption with a concurrent plan of reunification with Respondent. However, the court ordered DSS to refrain from filing a petition to terminate parental rights at that time. Respondent became upset at the June hearing and failed to return to the foster parents' home. Social workers and the foster parents searched for Respondent but could not locate her. Respondent remained missing for several months and lost her job at TJ Maxx.
After a hearing on 22 August 2013, the district court ordered DSS to file a petition to terminate Respondent's parental rights. Respondent was still missing at the time of the hearing, and the court expressed several concerns about Respondent's progress in the case:
The [c]ourt is concerned about [Respondent's] safety for a number of reasons. [She] has a significant CPS history as a child. She aged out of the foster care system. She has remained in the home of the foster parents because she lacks a strong support system outside of foster care. [Respondent] has some deficiencies in her intellectual functioning processes. More significant to the court is that [Respondent] has had to deal with severe emotional and mental impactors due to being sexually molested and abused as a child.... [Respondent's] experiences have had a significant impact on her ability to trust others, have made her more withdrawn, depressed, and anxious.... She was aware that she does not know how to manage her money well. She was aware that at times she did not respond well to information and assistance provided by professionals, because she believed that the information was sometimes presented in a condescending manner, although the information may have been presented as marked assistance. [Respondent] recognizes that she was passive-aggressive and did not know how to control her anger when it arose. She did provide proper care for the children when she was in the home with the [foster parents], although she lacked certain skills to parent fulltime.
The court further found that Respondent "has never been given the tools or taken advantage of the tools [she was given] to make it on her own and cannot take custody of the children."
On 23 October 2013, DSS filed petitions to terminate Respondent's parental rights to Ava and Jacob, alleging grounds of neglect, failure to make reasonable progress to correct the conditions that led to the removal of the children from her care, failure to pay a reasonable portion of the cost of care for the children, and dependency. SeeN.C. Gen.Stat. § 7B-1111(a)(1)-(3), (6) (2013). After a hearing on 24 June and 10 July 2014, the district court entered an order on 8 August 2014 terminating Respondent's parental rights to Ava and Jacob on the grounds of neglect, failure to make reasonable progress to correct the conditions that led to the removal of the children from her care, and dependency.[2] Respondent filed timely notice of appeal.
II. Analysis
Respondent argues that the district court erred in concluding that grounds existed to terminate her parental rights, because its conclusions are not supported by sufficient findings of fact based on clear, cogent and convincing evidence. With regard to the ground of dependency, Respondent also argues that the court's order only superficially addresses her ability to provide care and supervision for her children and does not explain why the children could not have been returned to her care at the time of the termination hearing. Respondent further argues that the court's order does not indicate that any inability she may have to provide for the care and supervision of her children would continue for the foreseeable future. Although we are keenly aware that Respondent's inabilities are largely due to her own childhood history of horrific abuse and neglect, we disagree with Respondent's contention that the district court's order terminating her parental rights on grounds of dependency is not properly supported.
This Court reviews an adjudication order concluding that grounds exist to terminate parental rights to determine "whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law."In re Shepard,162 N.C.App. 215, 221-22, 591 S.E.2d 1, 6 (citation omitted), disc. review denied sub nom. In re D.S.,358 N.C. 543, 599 S.E.2d 42 (2004). "Findings of fact supported by competent evidence are binding on appeal even though there may be evidence to the contrary." In re S.R.G.,195 N.C.App. 79, 83, 671 S.E.2d 47, 50 (2009). Undisputed findings of fact "are deemed to be supported by sufficient evidence and are binding on appeal." In re M.D.,200 N.C.App. 35, 43, 682 S.E.2d 780, 785 (2009). However, "[t]he trial court's conclusions of law are fully reviewable de novoby the appellate court." In re S.N.,194 N.C.App. 142, 146, 669 S.E.2d 55, 59 (2008) (citation and internal quotation marks omitted), affirmed per curiam,363 N.C. 368, 677 S.E.2d 455 (2009).
A district court may terminate parental rights if it concludes "[t]hat the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future...." N.C. Gen.Stat. § 7B-1111(a)(6). A dependent juvenile is defined in part as one who has a "parent, guardian, or custodian [that] is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen.Stat. § 7B-101(9) (2013). Accordingly, the court must support its conclusion that grounds for termination exist based on dependency by making findings that "address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." In re P.M.,169 N.C.App. 423, 427, 610 S.E.2d 403, 406 (2005).
In support of this ground here, the district court found that Respondent has an IQ of 77, in the borderline range, and suffers from several mental and emotional health problems, conditions that negatively affected her ability to supervise and care for her children. Her inability to properly parent her children is exemplified by her reaction to the June 2013 decision by the court to change the permanent plan for the children to adoption with a concurrent plan of reunification. After the hearing, Respondent left the courthouse and did not return home to her children. Instead, she stayed at a transit center and was homeless for several months. During that time, Respondent lost her only job, did not visit her children or attend their medical appointments, had no contact with DSS or the foster parents, did not attempt to engage in therapeutic treatment for her mental health problems, and ceased taking her medications. Although Respondent resumed contact with DSS in January 2014, by the date of the termination hearing she had not visited Ava and Jacob since the June 2013 hearing.
Additionally, the court found that Respondent had received therapy for more than six years from the same therapist, but was discharged from therapy in April 2013 because she was no longer meeting her therapy goals, and she did not attempt to reengage in therapy for several months. Respondent took part in independent living services provided by DSS while she resided with the foster parents, but stopped participating in the services when she left the foster parents' home. Similarly, Respondent also stopped participating in her parenting education and was discharged from the program when she left her foster parents' home. By the time of the termination hearing, Respondent had moved in with her mother, whose home is an inappropriate placement for the children because, among other concerns, the live-in fiancé of Respondent's mother has a conviction for rape of a child. No evidence was introduced during the termination hearing that Respondent had taken any steps to identify an appropriate alternative child care arrangement.
The district court also found that Respondent acknowledged that she had not consistently made progress on her goals toward stability and independence, and that she did not find her current therapy helpful because she was unable to connect with anyone. Respondent further admitted at the termination hearing that she was not in a position to parent her children but wanted her children to continue to wait for her in foster care until she got her own life "together ." Based on these findings, the court concluded that Respondent is unable to provide for her children's care or supervision, that her incapability will continue for the foreseeable future, and that she lacks an appropriate alternative child care arrangement.
Because the district court's findings regarding the children's dependency are all either unchallenged by Respondent on appeal or are otherwise supported by clear, cogent, and convincing evidence presented at the termination hearing, they are binding on this Court on appeal. We agree with the district court that Respondent's low IQ and her mental health problems constitute conditions that render her unable to provide care or supervision for her children. Even after residing with the foster parents pursuant to an extended foster care arrangement, Respondent has been unable to keep a job, obtain her GED, find an independent living arrangement, comply with her mental health treatment recommendations, or participate meaningfully in parenting education. We fully concur with the court's conclusions that until Respondent is able to establish independence, "she is likely to continue to need assistance in multiple capacities to overcome many things that are not her fault[,]" and that Respondent has shown little ability to achieve the required independence. We are sympathetic to the harsh and sad reality of Respondent's history and continuing circumstances, but this fact cannot require that Ava and Jacob live in limbo waiting for their mother to get herself together.
We conclude that the district court did not err in concluding that Respondent is incapable of providing for her children's care or supervision, as shown by her inability to make progress in achieving independence and her inappropriate and dangerous reactions to the court's previous rulings. It is uncontested that Respondent lacks an appropriate alternative child care arrangement for her children and they are thus dependent within the meaning of N.C. Gen.Stat. § 7B-101(9). Accordingly, we hold that the district court did not err in concluding that grounds exist to terminate Respondent's parental rights on the ground of dependency pursuant to N.C. Gen.Stat. § 7B-1111(a)(6). In light of this ruling, we need not address Respondent's arguments regarding the court's conclusions that grounds also exist to terminate her parental rights on the basis of neglect and failure to make reasonable progress to correct the conditions that led to the removal of the children from her care. See In re N.T.U.,--- N.C.App. ----, ----, 760 S.E.2d 49, 57 ("In termination of parental rights proceedings, the trial court's finding of any one of the ... enumerated grounds is sufficient to support a termination.") (citation and internal quotation marks omitted), disc. review denied,--- N.C. ----, 763 S.E.2d 517 (2014). Similarly, we need not address DSS's argument that the court erred in failing to conclude that grounds to terminate also existed based on Respondent's failure to pay for a portion of the cost of care for the children. See id.
Respondent has not challenged the court's dispositional conclusion that termination of her parental rights is in Ava's and Jacob's best interests, and we therefore affirm the court's order terminating Respondent's parental rights.
AFFIRMED.
Chief Judge McGEE and Judge DAVIS concur.
Opinion
Appeal by Respondent-mother from order entered 8 August 2014 by Judge Donald R. Cureton in Mecklenburg County District Court. Heard in the Court of Appeals 26 May 2015.

For the purpose of protecting their privacy, in accordance with Rule 3.1 of our Rules of Appellate Procedure, we refer to the juveniles by pseudonyms in this opinion.

The district court's order also terminated the parental rights of the children's fathers. However, the fathers are not parties to this appeal.