DAVIS, Judge.
P.O. ("Respondent-mother") and J.B. ("Respondent-father") (collectively "Respondents-parents") appeal from an order terminating their parental rights to the minor children C.M.B. ("Carmine"),[1] J.K.D.B. ("Jakob"), R.D.J. ("Rodney"), T.R.N. ("Trina"), and R.Z.C. ("Rachelle").[2] After careful review, we affirm.
Factual and Procedural Background
On 25 September 2014, the Guilford County Department of Health and Human Services ("DHHS") initiated the underlying juvenile case when it obtained non-secure custody of the children and filed petitions alleging they were abused, neglected, and dependent juveniles. Paternity for Carmine and Jakob was initially uncertain, but Respondent-father submitted to a paternity test on 3 November 2014 and was found to be their biological father. After a hearing on the petitions on 20 November 2014, the trial court entered an adjudication order on 29 December 2014 in which it concluded that the children were abused, neglected, and dependent juveniles.
On 15 January 2015, the trial court conducted a dispositional hearing and entered an order on 20 November 2015. The court established the plan for the juveniles as reunification with the parents and continued custody of the children with DHHS. Respondent-mother was ordered to comply with the terms and conditions of her service agreement with DHHS, which included completing assessments for mental health, domestic violence, and parenting skills; following recommended treatment; obtaining employment and housing; and remaining in contact with DHHS. The trial court ordered Respondent-father to enter into a service agreement with DHHS and begin complying with the terms and conditions of the agreement in order to obtain reunification with his children. Respondent-mother's visitation with the children was suspended until she completed a psychiatric evaluation and began taking her medication as prescribed. Respondent-father's visitation with his children was suspended until further order from the court.
On 30 and 31 July 2015, the trial court held a permanency planning review hearing. Respondent-father was not present at that hearing, had not yet been served with the juvenile petitions, and was believed to be homeless in Mecklenburg County. However, he had recently been in contact with DHHS.
The trial court entered an order on 17 December 2015 that continued custody of the children with DHHS and changed the permanent plan for the children to adoption with a concurrent plan of reunification. The court also concluded it was in the children's best interest to have DHHS pursue termination of parental rights, but stayed the filing of any petition to terminate parental rights for 90 days. Respondents-parents' visitation with the children remained suspended. After a second permanency planning review hearing held 22 October 2015, the trial court directed DHHS to file a petition to terminate parental rights to the children by 21 December 2015.
On 15 December 2015, DHHS filed a petition to terminate Respondent-parents' parental rights to the children. DHHS alleged grounds to terminate both Respondents-parents' parental rights based on neglect, failure to make reasonable progress to correct the conditions that led to the children's removal from their home, failure to pay a reasonable portion of the cost of care for the children, and dependency. See N.C. Gen. Stat. § 7B-1111(a)(1)-(3), (6) (2015). As to Respondent-father, DHHS also alleged grounds of failure to legitimate his children and abandonment. See N.C. Gen. Stat. § 7B-1111(a)(5), (7).
On 18, 19, and 22 April 2016, the trial court heard the petition and entered its order from that hearing on 15 June 2016. The court concluded that grounds existed to terminate Respondent-mother's parental rights based on (1) neglect; (2) failure to make reasonable progress to correct the conditions that led to the children's removal from their home; (3) failure to pay a reasonable portion of the cost of care for the children; and (4) dependency. The court also concluded that grounds existed to terminate Respondent-father's parental rights based on (1) neglect; (2) failure to make reasonable progress to correct the conditions that led to the children's removal from their home; (3) failure to pay a reasonable portion of the cost of care for the children; (4) failure to legitimate (only as to Carmine); and (5) abandonment. The trial court dismissed the petition as to the ground of dependency for lack of sufficient evidence. Respondent-parents filed timely written notices of appeal from the order terminating their parental rights.
Analysis
I. Respondent-mother's Appeal
Respondent-mother's counsel has filed a "no-merit" brief on her behalf in which counsel states that he has conducted a conscientious and thorough review of the record on appeal and has been unable to identify any issues with sufficient merit on which to base an argument for relief on appeal. Pursuant to Rule 3.1(d) of the North Carolina Rules of Appellate Procedure, Respondent-mother's counsel requests that this Court conduct an independent examination of the case. See N.C. R. App. P. 3.1(d). In accordance with Rule 3.1(d), counsel wrote a letter to Respondent-mother on 11 October 2016, advising her of counsel's inability to find error, of his request for this Court to conduct an independent review of the record, and of her right to file her own arguments directly with this Court. Counsel attached to the letter a copy of the record, a copy of the verbatim transcript of the hearing, and the brief filed by counsel. Respondent-mother has not filed her own written arguments, and a reasonable time for her to have done so has passed.
In addition to seeking review pursuant to Rule 3.1(d), counsel directs this Court's attention to several potential issues as to the trial court's conclusions of law concerning the grounds to terminate Respondent-mother's parental rights, whether termination of Respondent-mother's parental rights is in the children's best interests, and whether the trial court possessed subject matter jurisdiction to hear the petition. After carefully reviewing the transcript and record, we agree with counsel that the trial court's findings of fact support at least one ground for termination and that the trial court did not abuse its discretion in determining that termination of Respondent-mother's parental rights is in the children's best interests. See N.C. Gen. Stat. § 7B-1110 (2015) ; N.C. Gen. Stat. § 7B-1111. Moreover, there is nothing in the record suggesting the trial court lacked subject matter jurisdiction over the termination proceedings.
We are unable to find any possible prejudicial error in the trial court's 15 June 2016 order terminating Respondent-mother's parental rights to Carmine, Jakob, Rodney, Trina, and Rachelle, and we affirm the order as to Respondent-mother.
II. Respondent-father's Appeal
Respondent-father argues the trial court erred in concluding that grounds exist to terminate his parental rights to Carmine and Jakob. We disagree.
We first address Respondent-father's argument that the trial court erred in concluding that termination of his parental rights was appropriate based on the ground of willful abandonment. Our review on appeal is limited to a determination of whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether its findings of fact support its conclusions of law. In re Shepard , 162 N.C. App. 215, 221, 591 S.E.2d 1, 6, disc. review denied , 358 N.C. 543, 599 S.E.2d 42 (2004).
Under N.C. Gen Stat. § 7B-1111(a)(7), a trial court may terminate parental rights if "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion [.]" N.C. Gen. Stat. § 7B-1111(a)(7). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child[.]" In re S.R.G. , 195 N.C. App. 79, 84, 671 S.E.2d 47, 51 (2009) (citation and quotation marks omitted). Abandonment has also been defined as
wilful neglect and refusal to perform the natural and legal obligations of parental care and support. It has been held that if a parent withholds his presence, his love, his care, the opportunity to display filial affection, and wilfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child.
In re Humphrey , 156 N.C. App. 533, 540, 577 S.E.2d 421, 427 (2003) (citation omitted).
We have also held that "[w]illfulness is more than an intention to do a thing; there must also be purpose and deliberation." S.R.G. , 195 N.C. App. at 84, 671 S.E.2d at 51 (citation and quotation marks omitted). "Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence." Id. (citation and quotation marks omitted). "[T]he findings [of fact] must clearly show that the parent's actions are wholly inconsistent with a desire to maintain custody of the child." In re B.S.O. , 234 N.C. App. 706, 710, 760 S.E.2d 59, 63 (2014) (citation and quotation marks omitted).
Respondent-father contends that his actions since the beginning of the juvenile case cannot be construed as abandonment of Carmine and Jakob because he was never served with the underlying juvenile petitions and was not a party to the case, not allowed by DHHS to visit the children until he established paternity, and not allowed visitation with the children by the trial court until he entered a case plan with DHHS. Respondent-father contends he was thus prevented from seeing his children and did not willfully abandon them. However, his arguments are misplaced.
In support of its conclusion that Respondent-father abandoned Carmine and Jakob, the trial court made the following relevant findings of fact:
25. At the time of removal, [Respondent-father] was not living with [Respondent-mother] or his children. Instead, [Respondent-father] was homeless in Charlotte, Mecklenburg County, North Carolina. [Respondent-father] was not in Guilford County due to numerous outstanding warrants for his arrest on various criminal charges. Although [Respondent-father] had a relationship with [Jakob] at the time of removal, which relationship was formed while [Respondent-mother] and he were living together, [Respondent-father] had never met [Carmine].
....
29. [Respondent-father] learned from [Respondent-mother] on the day of removal that [Jakob] and [Carmine] had been taken into custody by the Department. [Respondent-father] returned to Greensboro from Charlotte in September 2015 and remained in Greensboro until sometime in November 2015 when he says he returned to Charlotte.
30. On October 2, 2014, Social Worker Connie Bowman called [Respondent-father] and informed him that [Jakob] was in the Department's custody. [Respondent-father] admitted that he was [Jakob's] father and he also said that he suspected he was [Carmine's] father too. [Respondent-father] said that he was homeless in Charlotte and that he was not in a position to have the children placed with him. [Respondent-father] requested that the children be placed with his mother, ... who he said was residing in Greensboro. The Social Worker asked [Respondent-father] to submit to a paternity test and [he] agreed to do so. The Social Worker provided [Respondent-father] with her contact information.
....
32. On October 22, 2014, Social Worker Bowman contacted [Respondent-father] and notified him that she had scheduled a paternity test for him at a LabCorp in Charlotte and provided him with the date, time, and location of the appointment.
....
35. On November 3, 2014, [Respondent-father] submitted to paternity testing in Charlotte, North Carolina.
....
37. On or about November 17, 2014, the Social Worker received the results of [Respondent-father's] paternity testing which revealed that he was [Jakob's] biological father. [Respondent-father] was notified about the paternity test results regarding [Jakob] in November 2014....
....
40. After receiving the results of the paternity testing on [Jakob,] the Social Worker requested that LabCorp compare [Respondent-father's] DNA to [Carmine's] DNA. On or about December 4, 2014, the Social Worker received the results from that DNA comparison which revealed that [Respondent-father] was the biological father of [Carmine]. [Respondent-father] was subsequently notified of the paternity test results. According to [Respondent-father,] he learned of the paternity test results from [Respondent-mother] in February 2015.
....
165. On December 7, 2015, the Social Worker discovered a possible telephone number for [Respondent-father], and when she called the number, [he] answered. [Respondent-father] did not provide an explanation as to why he had not contacted the Department about his children since the former Social Worker called him on October 2, 2014, other than to say that he had things that he had to take care of and he had only recently taken care of those things. [Respondent-father] also said that he was residing with his mother in Greensboro and that he had been residing there throughout the entire case. [Respondent-father] provided his mother's address. [Respondent-father] told the Social Worker that he had been having frequent contact with [Respondent-mother] throughout the case. [Respondent-father] expressed a desire to enter into a service agreement and work toward reunification. The Social Worker scheduled a meeting with [Respondent-father] to develop a service agreement and on December 11, 2015, the Social Worker also sent [Respondent-father] a letter containing the names and telephone numbers for service providers so that he could begin scheduling appointments.
....
213. Within the meaning of N.C.G.S. § 7B-1111(a)(7), during the six consecutive months immediately preceding the filing of the Petition to Terminate Parental Rights, that is, from June 15, 2015 to December 15, 2015, [Respondent-father] willfully abandoned the juveniles [Jakob] and [Carmine]. During that six-month period, [Respondent-father] did not initiate contact with the Department to inquire about his children's well-being, did not provide any financial support for his children, and did not participate in the juvenile proceeding regarding his children. Other than requesting visitation with [Jacob] and [Carmine] when the Social Worker called him on December 7, 2015, [Respondent-father] made no effort and showed no interest in pursuing visitation or reunification with his children. During the six month period, [Respondent-father] failed to perform the natural and legal parental obligations of care and support for the juveniles [Jakob] and [Carmine], withheld his love and presence from them, and deprived them of the opportunity to display filial affection. [Respondent-father's] conduct during the six-month period was wholly inconsistent with a desire to gain custody of the juveniles and evinced a purposeful intention to forego his parental rights and responsibilities to [Jakob] and [Carmine].
With regard to the above-quoted findings of fact, Respondent-father only challenges Finding No. 213, and the remaining findings are, therefore, binding on this Court on appeal.[3] Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991). Respondent-father's challenge to Finding No. 213 is not that it is unsupported by record evidence, but rather that his abandonment of the children was not willful because he was prohibited from visiting his children by DHHS and the trial court.
Respondent-father's argument exaggerates the limitations placed upon his contact with the children. He was never prohibited from taking steps to perform his natural and legal parental obligations or having any contact with his children. Rather, Respondent-father's visitation with his children was conditioned upon his taking certain steps toward ensuring their well-being and safety.
Moreover, since December 2014, Respondent-father has been fully aware that he was the biological father of Carmine and Jakob. He knew how to contact DHHS throughout the underlying case and chose not to do so despite being in frequent contact with Respondent-mother. Respondent-father was never prohibited from engaging with DHHS or joining the underlying juvenile case, and he willingly chose not to take these steps. Thus, he cannot now use the conditions imposed by DHHS and the trial court to excuse his abandonment of his children.
Furthermore, Respondent-father's own testimony at the termination hearing demonstrates that he willfully chose to ignore his parental responsibilities at Respondent-mother's request:
[GAL ATTORNEY:] What did you do in February and March of 2015 to get your children?
[RESPONDENT-FATHER:] I didn't do nothing. That's when I called [Respondent-mother] and I said you need me to get involved, what do I need to do? She said, I need you to fall back, I'm doing what I got to do to get my kids back, don't worry.
Respondent-father's testimony demonstrates that he never intended to become involved in the underlying juvenile case to regain custody of his children or ensure their well-being, and instead only offered to help Respondent-mother. Respondent-father's total lack of contact with Carmine and Jakob prior to the filing of the petition to terminate his parental rights was not due to any prohibition imposed by DHHS or the trial court but rather a result of his own refusal to accept his parental responsibilities.
Therefore, we hold the trial court's findings of fact establish that Respondent-father evinced a settled purpose to forego all parental duties and relinquish all parental claims to Carmine and Jakob and support its conclusion that grounds exist to terminate Respondent-father's parental rights to the children based on willful abandonment. Because the existence of one of the enumerated grounds under N.C. Gen. Stat. § 7B-1111 is sufficient to support termination of Respondent-father's parental rights, we need not address his arguments regarding the remaining grounds found by the trial court. In re B.S.D.S. , 163 N.C. App. 540, 546, 594 S.E.2d 89, 93-94 (2004).
Respondent-father does not challenge the trial court's dispositional conclusion that terminating his parental rights is in his children's best interests. Accordingly, we affirm the trial court's order terminating Respondent-father's parental rights to Carmine and Jakob.
Conclusion
For the reasons stated above, we affirm the trial court's 15 June 2016 order.
AFFIRMED.
Report per Rule 30(e).
Judges BRYANT and TYSON concur.

Pseudonyms are used throughout for ease of reading and to protect the identity of the children.

Respondent-father is only the father of Carmine and Jakob. The fathers of Rodney, Trina, and Rachelle are not parties to this appeal.

Respondent-father also challenges a number of other findings in the trial court's order, none of which directly relate to his argument on willful abandonment.