IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-853

Filed 05 September 2023

Guilford County, No. 21 JT 506

IN THE MATTER OF: C.J.B.

Appeal by Respondent-Father from order entered 27 July 2022 by Judge Marcus A. Shields in Guilford County District Court. Heard in the Court of Appeals 23 May 2023.

*Garron T. Michael for Respondent-Appellant.*

*Spidell Family Law, by Megan E. Spidell, for Petitioner-Appellee.*

CARPENTER, Judge.

Respondent-Father appeals from the trial court's 27 July 2022 Order Terminating Parental Rights ("Order"), which terminated his parental rights to the minor child, C.J.B. ("Crystal").[1] After careful review, we conclude the trial court erred by determining Respondent-Father willfully abandoned Crystal while Respondent-Father was subject to restrictive Indiana parole conditions, which barred him from any contact with Crystal. Accordingly, we reverse the Order and remand the matter to the trial court.

## I.     Factual and Procedural Background

---

[1]A pseudonym is used to protect the identity of the minor child and for ease of reading.

In 2010, Crystal was born to Petitioner and Respondent-Father during their marriage, and she was twelve years old at the time of the termination hearing. The couple separated in December of 2010, and by May of 2011, Petitioner and Respondent-Father executed a Consent Order by which the parties agreed to share joint custody of Crystal, with Petitioner having primary physical custody. Under the terms of this Consent Order, Respondent-Father was required to pay child support of $400 each month. Between May of 2011 and March of 2014, Respondent-Father exercised weekend visitations with Crystal and remained current on his monthly child-support obligation.

In May of 2014, Respondent-Father was convicted of two felonies related to sexual misconduct with a fourteen-year-old minor in Indiana. As a result of his conviction, Respondent-Father was incarcerated from 1 May 2014 until 3 July 2017. During his incarceration, Petitioner answered Respondent-Father's calls on one occasion, and she did not allow him to speak to Crystal. Upon Respondent-Father's release from prison, Indiana authorities placed him on parole through spring 2024, subject to restrictive conditions based on the nature of his conviction. Among the restrictions was an absolute bar to any form of communication with any minor child, including his biological child. Specifically, Respondent-Father's parole conditions provided as follows:

> [Y]ou shall not touch, photograph (still or moving), correspond with (via letter, email, text message or internet based communication or otherwise), and/or engage in any

'small talk' or unnecessary conversation with any child, including your biological or adopted children, either directly or via third-party, or an attempt to do any of the preceding without written approval in advance by your parole agent in consultation with your treatment provider. You must never be in a vehicle or any residence with any child, including your biological or adopted children, even if other adult(s) are present, without written approval in advance by your parole agent in consultation with your treatment provider. You must report any inadvertent contact with children, including your biological or adopted children, to your parole agent within 24 hours of contact. *If you have biological or adopted children, you may not have contact with them due to the nature and circumstances of your criminal convictions without advance written approval from the Indiana Parole Board in consultation with your parole agent and treatment provider.* 'Contact' includes, but not limited to, possessing photographs of children, writing and internet-based communicating, done either directly or through third parties. (emphasis added).

Following his release on 3 July 2017, Respondent-Father completed and passed the Abel Assessment and a lie-detector test, both of which were required by Indiana authorities before any modifications to his parole conditions would be considered. Respondent-Father first sought to modify his parole conditions in December of 2017, less than six months after his release, and his request was denied. Respondent-Father next petitioned for modifications to his parole conditions in 2019 and again shortly after Petitioner filed the termination petition in 2021. All three of Respondent-Father's requests—two before the filing of the petition and one after—were denied by the State of Indiana Parole Board.

Petitioner filed the termination petition on 2 June 2021, alleging Respondent-

Father willfully abandoned Crystal pursuant to N.C. Gen. Stat. § 7B-1111(a)(7) (2021). Respondent-Father filed an answer opposing the allegations on 20 August 2021. The termination hearing commenced on 1 July 2022. Respondent-Father appeared at the hearing despite being incarcerated in Guilford County on a charge of First-Degree Sexual Offense. The only witnesses during adjudication were Petitioner and Respondent-Father.

In her testimony, Petitioner acknowledged Respondent-Father was current on his child-support obligation and had no past-due arrearages. Counsel for Respondent-Father presented no evidence on adjudication but moved to dismiss at the close of Petitioner's evidence and at the close of all evidence, both of which were denied. Thereafter, Petitioner moved to recall Respondent-Father to testify further regarding the specific language of his parole restrictions and conditions. Without objection, the trial court briefly heard additional testimony from Respondent-Father.

At the close of evidence on adjudication, the court heard argument from counsel for Petitioner and counsel for Respondent-Father. Although the trial court afforded the Guardian ad Litem ("GAL") an opportunity to be heard, she declined, explaining: "Your Honor, in full candor to the Court, I'm being torn between what I believe the law is and what my wishes are on behalf of [Crystal], and as a result, I'm going to stay silent at this stage."

Having heard from all parties on adjudication, the trial court ruled Petitioner had met her burden by clear, cogent, and convincing evidence as to the asserted

termination ground, N.C. Gen. Stat. § 7B-1111(a)(7). The trial court's findings as to willful abandonment provided, in relevant part:

> 10(d). Respondent[-Father] had avenues pursuant to his parole conditions that would allow him to seek approval for contact with [Crystal]. However, Respondent[-Father] only took affirmative actions to seek approval to allow contact with [Crystal] sometime in 2017, 2019 and after the filing [of] the Petition to Terminate Parental Rights.
>
> 10(e). Respondent[-Father] demonstrated familiarity with said avenues through his attempts to seek approval in 2017 and again in 2019. Respondent[-Father] failed to make any attempts to seek approval from the Indiana Parole Board during the relevant period of time.
>
> 10(f). Respondent[-Father] failed to make reasonable efforts, even annually, to request approval from the Parole Board to allow contact with the juvenile since his release from prison in July 2017.
>
> 10(g). During the relevant period of time, Respondent[-Father] failed to send any cards, letters, gifts or tokens of affection, nor did he send any birthday or Christmas gifts or otherwise acknowledge any of these events for [Crystal].

The trial court proceeded to the dispositional stage where Petitioner and her husband served as the only witnesses on the best interests of Crystal. The GAL submitted a report on disposition and provided the trial court with a summary of her report for the record. Counsel for Respondent-Father presented no evidence on disposition but argued against termination. After considering the dispositional evidence, the trial court determined termination of Respondent-Father's parental rights was in Crystal's best interest. The trial court's oral findings were reduced to

writing, and the Order was formally filed on 27 July 2022. On 1 August 2022, Respondent-Father filed timely, written notice of appeal.

## II. Jurisdiction

The Order terminating Respondent-Father's parental rights is appealable pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 7B-1001(a)(7) (2021).

## III. Issue

The sole issue on appeal is whether the trial court erred in adjudicating Crystal willfully abandoned by Respondent-Father within the meaning of N.C. Gen. Stat. § 7B-1111(a)(7) under the facts and circumstances of this case.

## IV. Standard of Review

"Our Juvenile Code provides for a two-step process for termination of parental rights proceedings consisting of an adjudicatory stage and a dispositional stage." *In re Z.A.M.*, 374 N.C. 88, 94, 839 S.E.2d 792, 796 (2020); *see* N.C. Gen. Stat. §§ 7B-1109(e), 1110(a) (2021). "[A]n adjudication of any single ground in [N.C. Gen. Stat.] § 7B-1111(a) is sufficient to support a termination of parental rights." *In re E.H.P.*, 372 N.C. 388, 395, 831 S.E.2d 49, 53 (2019); *see also* N.C. Gen. Stat. § 7B-1110(a).

"We review a trial court's adjudication that a ground exists to terminate parental rights under [N.C. Gen. Stat.] § 7B-1111 to determine whether the findings are supported by clear, cogent, and convincing evidence and the findings support the conclusions of law." *In re A.M.*, 377 N.C. 220, 225, 856 S.E.2d 801, 806 (2021) (citations and quotation marks omitted). "Findings of fact not challenged by [the]

respondent are deemed supported by competent evidence and are binding on appeal. Moreover, we review only those findings necessary to support the trial court's determination that grounds existed to terminate [the] respondent's parental rights." *In re T.N.H.*, 372 N.C. 403, 407, 831 S.E.2d 54, 58–59 (2019) (citations omitted).

"A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding." *In re A.L.*, 378 N.C. 396, 400, 862 S.E.2d 163, 166 (2021) (citation omitted). "A trial court's finding of an ultimate fact is conclusive on appeal if the evidentiary facts reasonably support the trial court's ultimate finding [of fact]." *In re G.C.*, 384 N.C. 62, 65, 884 S.E.2d 658, 661 (2023) (citation omitted) (alteration in original).

"[W]hether a trial court's adjudicatory findings of fact support its conclusion of law that grounds existed to terminate parental rights . . . is reviewed de novo by the appellate court." *In re M.R.F.*, 378 N.C. 638, 641, 862 S.E.2d 758, 761–62 (2021) (citation omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the [trial court]." *In re T.M.L.*, 377 N.C. 369, 375, 856 S.E.2d 785, 790 (2021) (quoting *In re C.V.D.C.*, 374 N.C. 525, 530, 843 S.E.2d 202, 205 (2020) (alteration in original)).

## V.    Analysis

On appeal, Respondent-Father challenges two findings of fact as unsupported by the evidence and argues that the remaining, supported findings of fact fail to

support the trial court's conclusion that Respondent-Father willfully abandoned Crystal. Petitioner disagrees, asserting it is undisputed Respondent-Father did not attempt to contact Crystal in the determinative six-month period preceding the filing of the petition, and his prior efforts were not sufficient to obviate a finding of willfulness. After careful consideration, we tend to agree with Respondent-Father.

Our statutes are clear that before terminating parental rights on the ground of willful abandonment, a trial court must find that the petitioner has presented clear, cogent, and convincing evidence the respondent-parent "has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion . . . ." N.C. Gen. Stat. § 7B-1111(a)(7); *see* N.C. Gen. Stat. § 7B-1103(a)(1) (either parent is authorized to petition for the termination of parental rights of the other parent). "[A]lthough the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re B.R.L.*, 379 N.C. 15, 18, 863 S.E.2d 763, 767 (2021) (citation omitted).

### A. **Findings of Fact**

In this case, the determinative six-month period was 2 December 2020 through 2 June 2021. First, Respondent-Father asserts that findings 10(f) and 10(g) are not supported by clear, cogent, and convincing evidence. We agree, in part.

Finding 10(f) provides: "Respondent[-Father] failed to make reasonable efforts, even annually, to request approval from the Parole Board to allow contact with [Crystal] since his release from prison in July 2017." We first note that because finding 10(f) contains a value judgment regarding the reasonableness of Respondent-Father's efforts reached by a process of natural reasoning, finding 10(f) is more properly considered an ultimate finding and will be reviewed as such. *See In re G.C.*, 384 N.C. at 66 n.3, 884 S.E.2d at 661 n.3 ("[A]n ultimate finding is a finding supported by other evidentiary facts reached by natural reasoning.").

As this ultimate finding looks beyond the determinative six-month period, the trial court was either assessing Respondent-Father's credibility or intentions. *See In re B.R.L.*, 379 N.C. at 18, 863 S.E.2d at 767. Because ultimate finding 10(f) and the balance of the Order contain no credibility findings, adverse or favorable, our analysis presumes the trial court was discussing Respondent-Father's intentions regarding contact with Crystal. In reviewing the evidentiary facts contained within finding 10 and giving due deference to the trial court's fact-finding role, we conclude the trial court's evidentiary facts "reasonably support" its ultimate finding that Respondent-Father's efforts were not sufficiently reasonable to demonstrate his intent to reacquire the right to contact Crystal. *See In re G.C.*, 384 N.C. at 65, 884 S.E.2d at 661. Therefore, ultimate finding 10(f) is conclusive on appeal. *See id.* at 65, 884 S.E.2d at 661.

Next, finding 10(g) provides: "During the relevant period of time, Respondent[-Father] failed to send any cards, letters, gifts or tokens of affection, nor did he send any birthday or Christmas gifts or otherwise acknowledge any of these events for [Crystal]." Based on the testimony before the trial court, there appears to be no dispute this is a factually accurate statement. Nevertheless, this finding fails to address Respondent-Father's proffered explanation—he was barred from contacting his biological child "due to the nature and circumstances of [his] criminal convictions without advance written approval from the Indiana Parole Board[.]"[2] Therefore, to the extent this finding implies Respondent-Father possessed the ability to contact Crystal without subjecting himself to a real and significant risk of criminal prosecution, we disregard finding 10(g) on appeal. *See In re A.N.H.*, 381 N.C. 30, 44, 871 S.E.2d 792, 804 (2022).

## B. **Willful Abandonment**

Second, we must determine whether the trial court's findings of fact support its conclusion of law that Respondent-Father willfully abandoned Crystal within the meaning of N.C. Gen. Stat. § 7B-1111(a)(7). For the reasons discussed below, the findings are inadequate to sustain the conclusion that the abandonment in this case was willful, despite there being no dispute Respondent-Father failed to contact Crystal during the determinative period.

---

[2] Petitioner appears to concede this on appeal.

"Abandonment implies conduct on the part of the parent which manifests a willful determination to [forgo] all parental duties and relinquish all parental claims to the child." *In re B.S.O.*, 234 N.C. App. 706, 710, 760 S.E.2d 59, 63 (2014). In this context, "[w]illfulness is more than an intention to do a thing; there must also be purpose and deliberation[,]" and the trial court's "findings must clearly show that the parent's actions are wholly inconsistent with a desire to maintain custody of the child." *In re S.R.G.,* 195 N.C. App. 79, 84, 87, 671 S.E.2d 47, 51, 53 (2009) (citation omitted).

"While the question of willful intent is a factual one for the trial court to decide based on the evidence presented, and while the trial court's factual determination is owed deference, it remains our responsibility as the reviewing court to examine whether the evidence in the case supports the trial court's findings and whether, as a legal matter, the trial court's factual findings support its conclusions of law." *In re B.R.L.*, 379 N.C. at 18, 863 S.E.2d at 767 (citing *In re B.C.B.*, 374 N.C. 32, 35, 839 S.E.2d 748, 751 (2020); *In re Montgomery,* 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984)); *see In re T.M.H.*, 186 N.C. App. 451, 452, 652 S.E.2d 1, 1 (2007) (remanding after "the trial court failed to make findings of fact and conclusions of law concerning the willfulness of respondent's conduct").

Under a de novo review, we cannot conclude the trial court's adjudicatory findings of fact support its conclusion that Respondent-Father *willfully* abandoned Crystal. *See In re M.R.F.*, 378 N.C. at 641, 862 S.E.2d at 761–62. At all times

relevant to this case, Respondent-Father was subject to highly restrictive parole conditions due to his conviction in Indiana. Violation of Respondent-Father's parole conditions would pose a real and significant risk of criminal prosecution. Although there is no dispute that there was no contact during the determinative period, we attribute this to Respondent-Father's restrictive parole conditions, consistent with his testimony.

It is undisputed that Respondent-Father completed the Abel Assessment and a lie-detector test promptly upon his release. Respondent-Father then promptly submitted his initial request to modify his parole conditions in December of 2017 through his first probation officer, Officer Mounts, which was denied. Respondent-Father filed a second request some time in 2019, through an Officer Foster, which was denied. Upon receiving the termination petition, Respondent-Father filed a third request in 2021, through an Officer Harris, which was similarly denied. Furthermore, Respondent-Father remained current on his modified child-support obligation during the determinative period. Such conduct is not consistent with a parent who has manifested a willful determination to forgo all parental duties and relinquish all parental claims to the child. *See In re B.S.O.*, 234 N.C. App. at 710, 760 S.E.2d at 63. Similarly, the findings do not establish purpose or deliberation, and are insufficient to demonstrate Respondent-Father's actions were wholly inconsistent with a desire to maintain custody of Crystal. *See In re S.R.G.*, 195 N.C. App. at 84, 671 S.E.2d at 51.

Juvenile and termination proceedings implicate significant constitutionally protected rights, including the right to the care, custody, and control of a parent's child. *In re B.R.W.*, 381 N.C. 61, 77, 871 S.E.2d 764, 775 (2022). In this arena, we must tread carefully to avoid diluting the protections guaranteed by our state and federal Constitutions.

In its Order, the trial court accurately noted Respondent-Father's efforts to modify his parole conditions, yet it concluded Respondent-Father had not tried reasonably—that is, frequently or earnestly—enough. To affirm such an Order runs contrary to binding precedent and risks undue infringement upon a fundamental constitutional right. The GAL's remarks in declining to give closing argument on adjudication are instructive of the problem in this case. Indeed, Respondent-Father's conduct in Indiana, and more recently in this state, if true, is reprehensible. Nevertheless, reprehensibility is not tantamount to willful abandonment, which is the sole ground before us on appeal. We do not speculate upon the result if Petitioner had alleged additional ground(s) for termination, and our holding today does not abridge Petitioner's right to bring a new petition in the future. *See In re Adoption of Maynor*, 38 N.C. App. 724, 727, 248 S.E.2d 875, 877 (1978) ("The fact that a parent commits a crime which might result in incarceration is insufficient, standing alone, to show a settled purpose to forego all parental duties.") (citation and internal quotations omitted); *see also B.S.O.*, 234 N.C. App. at 710, 760 S.E.2d at 63; *S.R.G.,* 195 N.C. App. at 84, 671 S.E.2d at 51.

## VI.    Conclusion

Because the trial court's findings are insufficient to support the conclusion that Respondent-Father's abandonment of Crystal was willful, as defined in our Juvenile statutes and precedent, we are constrained to reverse the Order.

REVERSED AND REMANDED.

Chief Judge Stroud and Judge Dillon concur.