IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-592

Filed: 18 December 2018

Catawba County, Nos. 17 JT 298-99

IN THE MATTER OF: C.K.C. and W.T.C., III

Appeal by respondent-father from order entered 19 March 2018 by Judge
Wesley W. Barkley in Catawba County District Court. Heard in the Court of Appeals
29 November 2018.

*Stephen M. Schoeberle for petitioner-appellee grandmother.*

*Anné C. Wright for respondent-appellant father.*

ZACHARY, Judge.

Respondent, the biological father of the juveniles C.K.C. ("Cooper") and W.T.C.,
III ("Wes"),[1] appeals from an order terminating his parental rights. After careful
review, we reverse.

## I. Background

Respondent-father and the juveniles' biological mother were married in
October 2007 and divorced in June 2015.[2] Cooper was born in February 2009, and
Wes was born in February 2012. Petitioner "Karen Macintosh,"[3] the juveniles'

---

[1] Pseudonyms are used throughout the opinion to protect the identities of the juveniles and
other relevant parties, and for ease of reading.

[2] The juveniles' mother is not a party to this appeal.

[3] A pseudonym.

maternal grandmother, obtained an *ex parte* emergency custody order on 6 February 2014, in which she was granted temporary custody of Cooper and Wes. The maternal grandfather and his wife ("the Duncans")[4] were subsequently allowed to intervene in the custody matter.

On 14 January 2016, pursuant to a consent order, Petitioner-grandmother and the Duncans were awarded joint legal custody of Cooper and Wes. Petitioner-grandmother was granted primary physical custody of the children, and the Duncans were granted secondary physical custody, consisting of visitation every other weekend. Under the terms of the consent order, Respondent-father's child support obligation was terminated, and he was granted no visitation, although the order stated that it did "not prevent any remaining party from allowing" Respondent-father to have supervised visitation with the children. The consent order further provided that Petitioner-grandmother "shall file an action to terminate the parental rights" of Respondent-father, and "[a]ll parties agree that they shall not oppose said termination."

On 19 October 2017, Respondent-father filed a motion in the cause seeking to modify the consent order. Respondent-father asserted that there had been a significant change in circumstances since the entry of the order that affected the children's best interests. He claimed that Petitioner-grandmother had "attempted to

---

[4] A pseudonym.

totally alienate the minor children from [Respondent-father] and his family" and that he had "a stable home, marriage, and family life, and [was] ready, willing, and able to provide a stable home for the minor children." Respondent-father sought "sole care, custody, and control" of Cooper and Wes, subject to limited visitation with the other parties. Approximately one month later, on 16 November 2017, Petitioner-grandmother filed a petition to terminate Respondent-father's parental rights to the children based upon the grounds of neglect and willful abandonment. *See* N.C. Gen. Stat. § 7B-1111(a)(1), (7) (2017).

After a hearing on 20 February 2018, the trial court entered an order on 19 March 2018 in which it determined that grounds existed to terminate Respondent-father's parental rights based upon neglect by abandonment and willful abandonment. N.C. Gen. Stat. § 7B-1111(a)(1), (7). The trial court further concluded that it was in the best interests of Cooper and Wes that Respondent-father's parental rights be terminated. Accordingly, the trial court terminated Respondent-father's parental rights. Respondent-father appeals.

## II. Analysis

"This Court reviews a trial court's conclusion that grounds exist to terminate parental rights to determine whether clear, cogent, and convincing evidence exists to support the court's findings of fact, and whether the findings of fact support the court's conclusions of law." *In re C.J.H.,* 240 N.C. App. 489, 497, 772 S.E.2d 82, 88

(2015). We review the trial court's legal conclusions *de novo*. *In re A.B.*, 239 N.C. App. 157, 160, 768 S.E.2d 573, 575 (2015), *disc. review denied*, 369 N.C. 182, 793 S.E.2d 695 (2016). "A finding of any one of the enumerated grounds for termination of parental rights under [N.C. Gen. Stat.] 7B-1111 is sufficient to support a termination." *In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003).

**A. Willful Abandonment**

Respondent-father first argues that the trial court erred in determining grounds existed to terminate his parental rights based upon the ground of willful abandonment, pursuant to N.C. Gen. Stat. § 7B-1111(a)(7). We agree.

A trial court may terminate parental rights where "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C. Gen. Stat. § 7B-1111(a)(7). "Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child. The word willful encompasses more than an intention to do a thing; there must also be purpose and deliberation." *In re Adoption of Searle*, 82 N.C. App. 273, 275, 346 S.E.2d 511, 514 (1986) (internal quotation marks and citations omitted).

As this Court has held,

> [a] judicial determination that a parent willfully abandoned [the parent's] child, particularly when we are considering a relatively short six month period, needs to show more than a failure of the parent to live up to [the

> parent's] obligations as a parent in an appropriate fashion;
> the findings must clearly show that the parent's actions are
> wholly inconsistent with a desire to maintain custody of the
> child.

*In re S.R.G.*, 195 N.C. App. 79, 87, 671 S.E.2d 47, 53 (2009), *disc. review denied and cert. denied*, 363 N.C. 804, 691 S.E.2d 19 (2010). "Although the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re D.E.M.*, __ N.C. App. __, __, 810 S.E.2d 375, 378 (2018).

In this case, Petitioner-grandmother filed her petition to terminate Respondent-father's parental rights on 16 November 2017; therefore, the relevant six-month period was from 16 May 2017 to 16 November 2017. During that period of time, on 19 October 2017, Respondent-father filed a motion in the cause seeking to modify the consent order and requesting that he be granted the "sole care, custody, and control" of Cooper and Wes. Respondent-father's attempt to gain custody of Cooper and Wes demonstrates that he did not intend to forego all parental duties and relinquish all parental rights with regard to the juveniles. His motion thoroughly averts the trial court's determination that he willfully abandoned Cooper and Wes. *See In re D.T.L.*, 219 N.C. App. 219, 222, 722 S.E.2d 516, 518 (2012) ("Respondent's institution of a civil custody action undermines the trial court's finding and conclusion that he willfully abandoned the juveniles . . . and cannot support a conclusion that he

had a willful determination to forego all parental duties and relinquish all parental claims to the juveniles.").

Additionally, several of the trial court's findings of fact in support of its conclusion that Respondent-father willfully abandoned Cooper and Wes rely on the 14 January 2016 consent order, including the following:

> 30. That a Consent Order was signed by all parties particularly to this action, and particularly by [Respondent-father] in Catawba County File No. 14 CVD 244.
>
> 31. That the language of that order is very specific as to all manner of interactions with the children, including who has custody, which in this case would be joint legal custody between [Petitioner-grandmother] . . . and the [Duncan] family, however primary would have been placed with [Petitioner-grandmother], secondary with the [Duncan] family.
>
> 32. That the Order is very specific as to visitation and as to contact, and in fact indicates that [Respondent-father] shall have no visitation with the minor children.
>
> 33. That the order indicates likewise that his child support obligation will be terminated.
>
> 34. That the Order indicates that a Petition to Terminate the Parental Rights of the Defendants shall be filed, and that all parties agree they shall not oppose said termination.
>
> 35. That [Respondent-father] signed that document, and was represented by counsel at the time.
>
> 36. *That by signing said Order, [Respondent-father], in essence, in January 2016 agreed to close the door himself to*

> *his ability to parent these children, or to have the control or capacity to parent the children.*
>
> . . . .
>
> 40. That [Petitioner-grandmother] informed [Respondent-father], pursuant to the Consent Order, that she was exercising her authority and control to deny visitation; but the denial adhered to the language in the Consent Order that was signed by [Respondent-father].

(Emphasis added).

We agree that the consent order into which the parties entered provided that Respondent-father's child support obligations would be terminated, that he would have no scheduled visitation, and that all parties—including Respondent-father—would not oppose termination of his parental rights. However, we conclude that the consent order, as construed by the trial court, is void as against public policy, insofar as it constitutes an agreement that Respondent-father's parental rights should be terminated or that Respondent-father relinquished his parental rights to Wes and Cooper.

Our statutes provide for a two-step judicial process in juvenile proceedings for termination of parental rights: the adjudicatory stage and the dispositional stage. *See* N.C. Gen. Stat. §§ 7B-1109, -1110 (2017). This statutorily prescribed process must be followed. *See In re Jurga*, 123 N.C. App. 91, 96, 472 S.E.2d 223, 226 (1996) (holding that a written declaration of voluntary termination of parental rights contravened statutory procedures and was therefore ineffective). Moreover, an

agreement to relinquish parental rights "is void as against public policy because it removes from the court its power to assert the . . . objectives" of the termination of parental rights statutes. *Foy v. Foy*, 57 N.C. App. 128, 131, 290 S.E.2d 748, 750 (1982) ("In essence, the parental rights of a parent in his child are not to be bartered away at the parent's whim."). Furthermore, the terms of the consent order do not meet the statutory requirements for a consent to adoption under N.C. Gen. Stat. § 48-3-606 or for relinquishment of parental rights to an agency under N.C. Gen. Stat. § 48-3-703. *See generally* N.C. Gen. Stat. §§ 48-3-606, 48-3-703 (2017). Thus, to the extent that the trial court relied upon the consent order in determining that Respondent-father had willfully abandoned Cooper and Wes, particularly with respect to finding number 36 above, we conclude that the consent order, as construed, is void as against public policy. Accordingly, we hold that the trial court erred by concluding that grounds existed to terminate Respondent-father's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(7).

**B. Neglect by Abandonment**

Respondent-father next contends that the trial court erred in concluding that grounds existed to terminate his parental rights based upon neglect by abandonment under N.C. Gen. Stat. § 7B-1111(a)(1). We agree.

Our juvenile code provides that a court may terminate parental rights upon a finding that "[t]he parent has . . . neglected the juvenile" within the meaning of N.C.

Gen. Stat. § 7B-101 (2017). N.C. Gen. Stat. § 7B-1111(a)(1). The definition of a neglected juvenile includes one "who has been abandoned[.]" N.C. Gen. Stat. § 7B-101(15). As explained above, "[a]bandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *Searle*, 82 N.C. App. at 275, 346 S.E.2d at 514. "Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence." *S.R.G.*, 195 N.C. App. at 84, 671 S.E.2d at 51.

"A finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." *In re Young*, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997). Thus, in order to terminate a parent's rights on the ground of neglect by abandonment, the trial court must make findings that the parent has engaged in conduct "which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child" as of the time of the termination hearing. *See S.R.G.*, 195 N.C. App. at 84, 671 S.E.2d at 51.

Our previous analysis regarding the trial court's determination that Respondent-father willfully abandoned Cooper and Wes pursuant to N.C. Gen. Stat. § 7B-1111(a)(7) is relevant to the determination of whether Respondent-father neglected the juveniles by abandonment pursuant to N.C. Gen. Stat. § 7B-1111(a)(1). Respondent-father's attempt to gain custody of Cooper and Wes in October 2017

demonstrates that he did not intend to "forego all parental duties and relinquish all parental claims to the juveniles" at the time of the termination hearing. *See D.T.L.*, 219 N.C. App. at 222, 722 S.E.2d at 518. Thus, we similarly conclude that Respondent-father's attempt to gain custody of the juveniles by filing a motion in the cause precludes the trial court's determination that Respondent-father neglected the juveniles by abandonment. To the extent that the trial court relied on the 14 January 2016 consent order in concluding that Respondent-father had neglected the juveniles by abandonment, for the reasons previously stated herein, we conclude that the consent order, as construed by the trial court, is void as against public policy. Therefore, we hold that the trial court erred by concluding that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) to terminate Respondent-father's parental rights.

### III. Conclusion

In conclusion, we hold that the trial court erred in terminating Respondent-father's parental rights based upon the grounds of willful abandonment and neglect by abandonment. We therefore reverse the trial court's order.

Respondent-father also challenges the trial court's dispositional conclusion that termination of his parental rights was in the best interests of Cooper and Wes. However, given that we have reversed the trial court's order on adjudicatory grounds,

- 10 -

we need not address that argument. *See In re Anderson*, 151 N.C. App. 94, 99-100, 564 S.E.2d 599, 603 (2002).

REVERSED.

Judges CALABRIA and TYSON concur.