IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-675

Filed 19 February 2025

Henderson County, Nos. 23 JT 103–05

IN THE MATTER OF:

X.I.F., J.R.F., C.D.F.

Minor Children

Appeal by respondent-father from orders entered 25 April 2024 by Judge Lora T. Baker in Henderson County District Court. Heard in the Court of Appeals 16 January 2025. Henderson County, Nos. 23 JT 103–05.

*Rebekah W. Davis, for respondent-appellant father.*

*Krista S. Peace, for petitioner-appellee mother.*

FREEMAN, Judge.

Respondent-father appeals from orders terminating his parental rights as to X.I.F. ("Xia"), J.R.F. ("Janet"), and C.D.F. ("Cody").[1] On appeal, respondent-father contends the trial court erred in concluding grounds existed to terminate his parental rights under N.C.G.S. §§ 7B-1111(a)(1), (6), and (7). After careful review, we agree the trial court's findings do not support its conclusions that grounds existed under

---

[1] Pursuant to N.C. R. App. P. 42(b), pseudonyms are used to protect the juveniles' identities.

subsections (a)(1) and (a)(6). However, because we conclude the trial court did not err in concluding grounds existed to terminate respondent-father's parental rights under subsection (a)(7), and because only one ground is necessary to support termination of parental rights, we vacate in part and affirm in part.

## I.   Factual and Procedural Background

Petitioner-mother and respondent-father are the biological parents of Xia, Janet, and Cody. The parties lived together from 2007 until their "on-again, off-again" relationship ended in either 2012 or 2013. After the parties separated, the children have continuously resided with petitioner-mother.

Respondent-father was incarcerated for "a good bit of" the period from 2013 to 2018. During respondent-father's incarceration, petitioner-mother "tr[ied] to make it to where he could communicate with the kids" by depositing funds into his prison account to facilitate phone calls that occurred "once, maybe twice a week." Upon respondent-father's release, petitioner-mother "told him if he ever went to jail again, [she] would no longer put money on his books to contact his children and [she] would be done."

Respondent-father "didn't have much of a relationship with the children" when he was not incarcerated. Petitioner-mother made multiple arrangements for the children to see respondent-father, but apart from one visit in 2018 when he brought petitioner-mother money to purchase shoes for the children, respondent-father did not see them. About three weeks after that visit, respondent-father began

serving a sentence of incarceration for drug trafficking with an expected release date of 2027.

As petitioner-mother had previously indicated, she stopped "trying to encourage or arrange [a] relationship or visitation" between the children and respondent-father upon his 2018 incarceration. Specifically, petitioner-mother stopped depositing funds into respondent-father's prison account to fund phone calls. Respondent-father attempted to use a third party to facilitate communication prior to 2022, but eventually "the third party said that [petitioner-mother] was no longer responding or sending my letters back." However, petitioner-mother did not change her phone number or address, and even though respondent-father knew her address, the only communication between respondent-father and his children since 2018 consisted of two letters he sent in 2022.

When asked whether she had tried to prevent respondent-father from seeing the children, petitioner-mother stated:

> Yes, I have. . . . That was when he first got incarcerated and I told him that I wasn't doing this no more because I felt like the only time he contacted his children and wanted anything to do with these children is when he was incarcerated.

According to petitioner-mother, she "never stopped him from writing" and "never stopped the children from writing," but she felt "[i]t's not up to me to make a relationship."

In 2016, petitioner-mother began a relationship with David Maynor. Mr.

Maynor and petitioner-mother began living together in 2018 and were married in 2019. At some point, petitioner-mother's oldest child suggested that Mr. Maynor adopt the children.

On 14 November 2023, petitioner-mother filed petitions to terminate respondent-father's parental rights as to Xia, Janet, and Cody. The petitions alleged, as is relevant here, that:

> 7. The facts warranting the determination that grounds exist for termination of the parental rights of the Respondent pursuant to N.C. Gen. Stat. § 7B-1111 are as follows:
>
> a. The Respondent has not seen the minor child since 2016 . . . .
>
> b. The actions of the Respondent constitute a willful abandonment of the minor child for a period in excess of six (6) months next preceding the filing of this Petition as described in N.C. Gen. Stat. § 7B-1111(a)(7), in that Respondent has had, at his own election, has had no contact of any nature whatsoever, with the minor child since 2016 when he briefly saw the minor child, and three years ago when he sent a letter to the minor child. The Respondent has had no in person contact with the minor child since 2016. . . . The Respondent has made no other efforts to contact the minor child.
>
> c. The Respondent has not provided any direct or formal support for the minor child since the separation of the parents in 2012.
>
> d. The Respondent is a convicted felon and is currently serving time in prison for trafficking schedule II with a potential release date of October 28, 2027.
>
> f. The Respondent has had zero communication with the minor child in three years.

g. The Respondent has sent no birthday presents nor birthday cards to the minor child since the separation of the parents.

h. The Respondent has sent no Christmas presents nor Christmas cards to the minor child since the separation of the parents.

i. The Respondent has sent no cards, no clothing, no toys and no gifts to the minor child.

j. The Respondent has had a complete lack of involvement with the child for more than three years establishing a pattern of abandonment and neglect.

k. The Respondent has neglected and abandoned the minor child for the six-month period immediately preceding the filing of the petition.

l. The Respondent has willfully failed to pay a reasonable portion of the cost of the child's care since the separation of the parents and for the six-month period immediately preceding the filing of this petition.

m. The Respondent lacks the ability to care for the minor child since he is incarcerated and lacked the ability to care for the minor child prior to his incarceration.

n. The conduct of the father has been such as to demonstrate that he will not promote the child's healthy and orderly physical and emotional well-being.[2]

The termination hearing took place before Judge Lora T. Baker in Henderson County District Court on 28 March 2024. After reviewing the petitions and hearing testimony from respondent-father, petitioner-mother, and Mr. Maynor, the trial court orally announced its dispositional ruling:

---

[2] The petitions contained no subpart 7(e).

Petition filed by petitioner alleges or requests termination of parental rights for respondent father based off of 7B-1111(a)(7) which shows that the parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or the parent has voluntarily abandoned an infant. We're clearly not in the infant situation. So by my math the time period we're talking about is—the petition was filed November 14, 2023. So that time period would be May 14, 2023 to November 14 2023.

I find by clear and convincing evidence that father has willfully abandoned the juvenile for those six consecutive months preceding the filing of the petition. I find no communication, no letters, no phone calls, no visitation, no financial support, nothing that would evidence an intent to maintain a relationship with the minor children during that relevant six-month period.

Looking outside that six-month period, just in relation to father's intent, I will find that he sent two letters, the last being 2022. That he sent money in the amount of $90 for the children in 2018. That was accompanied by a five-minute visit with the minor children. That clearly incarceration has been an impediment to the father trying to reach out to the children and to establish and maintain a relationship, and I am taking that into consideration that that clearly does impose issues with father's attempt to maintain the relationship. But just due to the fact that he had sent letters in the past, he had the ability and wherewithal to do so. The mother hadn't changed her address during that relevant time period, hadn't changed her phone number during that relevant time period. So he had the means and opportunity to at least sent letters and make phone calls even though physical visitation was not possible.

The trial court further orally concluded that it would be in the children's best interest to terminate respondent-father's parental rights. On 25 April 2024, the trial

- 6 -

court entered three orders terminating respondent-father's parental rights to each of the three children. As is relevant here, the orders stated:

> 7. That facts warranting the determination that grounds exist for the termination of the parental rights of the Respondent pursuant to N.C. Gen. Stat. § 7B-1111 are as follows:
>
> a. The Respondent has not seen the minor child since 2016 . . . .
>
> b. The actions of Respondent constitute a willful abandonment of the minor child for a period in excess of six (6) months next preceding the filing of this Petition as described in N.C. Gen. Stat. § 7B-1111(a)(7), in that Respondent has had no contact of any nature whatsoever, with the minor child during the relevant period from November 14, 2023 through May 14, 2024.
>
> c. Clear and convincing evidence exists that the father willfully abandoned the minor child for six consecutive months prior to the filing of the petition.
>
> d. The court finds that there was no communication between the father and the minor child, no letters, no visits, no financial support nor anything that would indicate an intent to maintain a relationship with the minor child during the relevant period.
>
> e. Looking outside the relevant time period in relation to the father's intent, the court finds that the father sent $30.00 to pay for the minor's shoes in 2018 and that he sent two letters in 2022.
>
> f. The mother had the same address where the father dropped off the $30.00 and sent the two letters and the mother had the same phone number since the father has been incarcerated.
>
> g. The father's incarceration may have been an impediment to the father's ability to reach out and maintain a

> relationship, however, the father clearly had the ability and knowledge to communicate with the minor child. The father testified that he maintained phone contact with another minor child and he has previously sent this minor child letters so he had the ability to maintain contact despite his incarceration.
>
> h. Previous to this most recent incarceration, the father made little attempt to maintain a relationship with the minor child.
>
> i. The father has displayed a pattern of conduct indicating his lack of intent to maintain a relationship with the minor child.

The orders concluded that "Respondent's parental rights with the minor child[ren] should be permanently terminated on the grounds stated in N.C. Gen. Stat. §§ 7B-1111[(a)](1)(6) and (7), and taking into account the best interest of the child[ren]." Respondent-father timely appealed to this Court, arguing that the trial court erred by terminating his parental rights under N.C.G.S. §§ 7B-1111(a)(1), (6), and (7).

## II.    Jurisdiction

This Court has jurisdiction to review "[a]ny order that terminates parental rights or denies a petition or motion to terminate parental rights." N.C.G.S. § 7B-1001(a)(7) (2023).

## III.    Standard of Review

A termination of parental rights proceeding involves two different stages that trigger two distinct standards of review on appeal. At the first stage, the adjudicatory stage, "the party petitioning for the termination must show by clear, cogent, and

convincing evidence that grounds authorizing the termination of parental rights exist." *In re Young*, 346 N.C. 244, 247 (1997). "If a trial court's finding of fact is supported by clear, cogent, and convincing evidence, it will be deemed conclusive even if the record contains evidence that would support a contrary finding." *In re S.R.*, 384 N.C. 516, 520 (2023) (cleaned up). "A trial court's finding of an ultimate fact is conclusive on appeal if the evidentiary facts reasonably support the trial court's ultimate finding of fact." *In re G.C.*, 384 N.C. 62, 65 (2023) (cleaned up). We review de novo whether the trial court's properly supported findings of fact in turn support its conclusions of law. *Id.* at 66.

At the second stage of a termination of parental rights proceeding, the dispositional stage, the trial court considers whether termination of the respondent's parental rights would be in the child's best interest. "The trial court's assessment of a juvenile's best interests at the dispositional stage is reviewed solely for abuse of discretion," and we "review the trial court's dispositional findings of fact to determine whether they are supported by competent evidence." *In re C.B.*, 375 N.C. 556, 560 (2020) (citations omitted).

Respondent-father's arguments in this matter focus solely on the adjudicatory stage of the proceeding. Accordingly, we review whether the trial court's factual findings are supported by clear, cogent, and convincing evidence and whether the supported factual findings in turn support the trial court's conclusions of law.

## IV.   Analysis

On appeal, respondent-father argues: (1) the trial court erred in concluding grounds existed to terminate his parental rights under N.C.G.S. § 7B-1111(a)(1); (2) the trial court erred in concluding grounds existed to terminate his parental rights under N.C.G.S. § 7B-1111(a)(6); and (3) the evidence and findings did not support the trial court's conclusion that grounds existed to terminate his parental rights under N.C.G.S. § 7B-1111(a)(7). We address each argument in turn.

**A. N.C.G.S. § 7B-1111(a)(1)**

Section 7B-1111 of our General Statutes provides that a court may terminate an individual's parental rights "upon a finding of one or more" of eleven statutory grounds. N.C.G.S. § 7B-1111(a) (2023). The first statutory ground contemplates termination where the parent "has abused or neglected the juvenile" within the meaning of those terms provided in section 7B-101. N.C.G.S. § 7B-1111(a)(1) (2023).

Respondent-father argues that the trial court erred in concluding grounds existed to terminate his parental rights under N.C.G.S. § 7B-1111(a)(1) because the petitions failed to provide notice of this ground for termination and because the trial court's conclusion "was not supported by the findings or the evidence." As we agree with respondent-father's substantive argument regarding the trial court's conclusion, we decline to reach his notice argument.

Though willful abandonment of a child may support termination of parental rights under either N.C.G.S. § 7B-1111(a)(1) or (7), the analytical framework for reaching such conclusion differs meaningfully between each ground. Under N.C.G.S.

§ 7B-1111(a)(7), the court must make proper factual findings supporting a conclusion that the respondent "has willfully abandoned the juvenile for *at least six consecutive months* immediately preceding the filing of the petition[.]"  N.C.G.S. § 7B-1111(a)(7) (2023) (emphasis added).  In contrast, "[a] finding of neglect sufficient to terminate parental rights" under N.C.G.S. § 7B-1111(a)(1) "must be based on evidence showing neglect *at the time of the termination proceeding*."  *In re Young*, 346 N.C. at 248 (emphasis added).

> Thus, in order to terminate a parent's rights on the ground of neglect by abandonment, the trial court must make findings that the parent has engaged in conduct which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child as of the time of the termination hearing.

*In re C.K.C.*, 263 N.C. App. 158, 164 (2018) (cleaned up).

Here, the trial court's factual findings refer to respondent-father's conduct in 2018, 2022, and in the six-month period prior to the filing of the petition.  Because the trial court failed to make any findings regarding respondent-father's conduct demonstrating neglect by abandonment "at the time of the termination hearing," *In re Young*, 346 N.C. at 248, its conclusion that grounds existed to terminate respondent-father's parental rights under N.C.G.S. § 7B-1111(a)(1) is unsupported.  Accordingly, we vacate that portion of the trial court's orders.

**B.  N.C.G.S. § 7B-1111(a)(6)**

Respondent-father next argues that the trial court erred in concluding that

grounds existed to terminate his parental rights under N.C.G.S. § 7B-1111(a)(6). That subsection permits termination of parental rights when the petitioner demonstrates that the respondent "is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonably probability that the incapability will continue for the foreseeable future." N.C.G.S. § 7B-1111(a)(6) (2023).

A "dependent juvenile within the meaning of G.S. 7B-101" is a juvenile "in need of assistance or placement" because either "(i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision," or "(ii) the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C.G.S. § 7B-101(9) (2023). Our Supreme Court has reasoned that a juvenile is "not 'in need of assistance or placement' at the time [a] petition [is] filed" if the juvenile is "in the legal and physical custody of her mother." *In re K.R.C.*, 374 N.C. 849, 860 (2020) (quoting N.C.G.S. § 7B-101(9) (2019)).

Here, respondent-father argues the trial court erred in concluding grounds existed to terminate his parental rights under N.C.G.S. § 7B-1111(a)(6) because the petitions failed to provide notice of this ground and because the findings and evidence did not support such a conclusion. As we agree with respondent-father's substantive argument regarding the trial court's conclusion, we decline to reach his notice argument.

It is undisputed that the juveniles were in the custody of petitioner-mother at the time the petitions were filed. The petitions specifically alleged—and the trial court specifically found—that "[p]etitioner . . . is the biological mother of the minor child[ren] and resides with the minor child[ren]" at petitioner-mother's home. Because the juveniles were "in the legal and physical custody of [their] mother" at the time the petitions were filed, they were not " 'dependent juvenile[s] within the meaning of G.S. 7B-101' as required to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-111(a)(6)." *In re K.R.C.*, 374 N.C. at 860 (quoting N.C.G.S. § 7B-101(9) (2019)). Accordingly, we vacate that portion of the trial court's orders.

## C. N.C.G.S. § 7B-1111(a)(7)

Finally, respondent-father argues that the evidence and factual findings did not support the trial court's conclusion that grounds existed to terminate his parental rights under N.C.G.S. §7B-1111(a)(7). That subsection permits a trial court to terminate an individual's parental rights when the petitioner demonstrates the respondent has "willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition[.]" N.C.G.S. § 7B-1111(a)(7).

### 1. Factual Findings

Here, respondent-father argues that "[t]he findings and evidence did not show a willful intent to abandon Cody, Janet, and Xia." Specifically, respondent-father challenges the trial court's findings of fact 7(b), (c), (d), (g), (h), and (i).

Respondent-father first contends that the trial court misidentified the relevant

time period in finding (b). We agree. Because the petitions were filed on 14 November 2023, the relevant six-month period was 14 May 2023 to 14 November 2023, not 14 November 2023 to 14 May 2024. However, a review of the record and transcripts in this case demonstrates that the trial court's characterization of the relevant time period was a scrivener's error which had no substantive impact on its reasoning or conclusions. Respondent-father does not contend, and we do not believe, that this error is ground for reversal of the orders.

Next, relying on *In re N.D.A.*, 373 N.C. 71 (2019), respondent-father argues that "[m]any of the findings" in (b), (c), (g), (h), and (i) "were ultimate findings and conclusions of law" and that the "ultimate findings were not explained by evidentiary findings of fact, which is a requirement of Rule 52(a)(1)." While we agree that findings (b) and (c) are properly classified as conclusions of law, respondent-father's argument misapprehends the current state of the law and the fact-finding duties imposed on trial courts.

Rule 52(a)(1) provides that "[i]n all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." N.C.G.S. § 1A-1, Rule 52(a)(1) (2023). Contrary to respondent-father's contention that trial courts are required to expressly explain ultimate findings with evidentiary findings, our Supreme Court has stated that:

> Rule 52(a) does not require a recitation of the evidentiary

> and subsidiary facts required to prove the ultimate facts, it does require *specific findings* of the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached.

*Quick v. Quick*, 305 N.C. 446, 452 (1982), *superseded in part by statute on other grounds as stated in State v. Brice*, 370 N.C. 244, 251 (2017).

Respondent-father's reliance on *In re N.D.A.* is similarly misplaced. Although *In re N.D.A.*'s statement that "an ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact," *In re N.D.A.*, 373 N.C. at 76 (cleaned up), would require that ultimate findings be expressly explained by evidentiary findings, our Supreme Court has clarified that *In re N.D.A.* "misused the term 'ultimate fact[.]'" *In re G.C.*, 384 N.C. at 65 n.3. That is why our Supreme Court "overturn[ed] [its] prior caselaw to the extent it misuses the term 'ultimate fact,'" and clarified that "an ultimate finding is a finding supported by other evidentiary facts reached by natural reasoning." *Id.*

In contrast, "any determination requiring the exercise of judgment or the application of legal principles is more properly classified as a conclusion of law." *In re Helms*, 127 N.C. App. 505, 510 (1997) (citations omitted). Where a trial court mislabels "conclusions of law as findings of fact, findings of fact which are essentially conclusions of law will be treated as such on appeal." *In re J.O.D.*, 374 N.C. 797, 807 (2020) (cleaned up).

Here, findings (b) and (c) state in relevant part that "[t]he actions of Respondent constitute a willful abandonment of the minor child[ren]" and that "[c]lear and convincing evidence exists that the father willfully abandoned the minor child[ren.]" The determination of whether a parent has willfully abandoned their child under N.C.G.S. § 7B-1111(a)(7) requires "the exercise of judgment" and "the application of legal principles" and is therefore a conclusion of law, not a finding of fact. As "findings" (b) and (c) are both essentially the trial court's legal conclusion that grounds existed to terminate respondent-father's parental rights for willful abandonment under N.C.G.S. § 7B-1111(a)(7), we review that conclusion in the subsequent section.

Our review of the properly classified findings of fact examines "whether the record of the proceedings demonstrates that the trial court, through processes of logical reasoning, based on the evidentiary facts before it, found the ultimate facts necessary to dispose of the case." *In re J.N.J.*, 286 N.C. App. 599, 605 (2022) (quoting *In re J.W.*, 241 N.C. App. 44, 48–49 (2015)). "If a trial court's finding of fact is supported by clear, cogent, and convincing evidence, it will be deemed conclusive even if the record contains evidence that would support a contrary finding." *In re S.R.*, 384 N.C. at 520 (cleaned up). "Unchallenged findings are deemed to be supported by the evidence and are binding on appeal." *In re S.C.L.R.*, 378 N.C. 484, 487 (2021).

Here, our review of the record demonstrates that the following portions of the trial court's findings are either properly supported or unchallenged on appeal:

d. The court finds that there was no communication between the father and the minor child, no letters, no visits, no financial support nor anything that would indicate an intent to maintain a relationship with the minor child during the relevant period.

e. Looking outside the relevant period in relation to the father's intent, the court finds that the father sent $30.00 to pay for the minor's shoes in 2018 and that he sent two letters in 2022.

f. The mother had the same address where the father dropped off the $30.00 and sent the two letters and the mother had the same phone number since the father has been incarcerated.

g. The father's incarceration may have been an impediment to the father's ability to reach out and maintain a relationship, however, the father clearly had the ability and knowledge to communicate with the minor child. . . . .

h. Previous to this most recent incarceration, the father made little attempt to maintain a relationship with the minor child.

i. The father has displayed a pattern of conduct indicating his lack of intent to maintain a relationship with the minor child.

Finding (d), that there was no communication, letters, visits, or financial support during the relevant time period, is supported by uncontroverted evidence. All the evidence, including respondent-father's testimony, demonstrated that there was no communication, letters, visits, or financial support in the relevant six-month period. Findings (e) and (f) are unchallenged and are therefore binding. *See In re S.C.L.R.*, 378 N.C. at 487 ("Unchallenged findings are deemed to be supported by the evidence and are binding on appeal.").

The portion of finding (g) discussing respondent-father's "ability and knowledge to communicate with the minor child[ren]" is supported by clear, cogent, and convincing evidence. Both petitioner-mother and respondent-father testified that he had previously sent letters to the children at petitioner-mother's address and respondent-father testified he still knew where to send letters to communicate with the children. Based on this evidence, and considering the unchallenged finding (f) that petitioner-mother "had the same address where the father . . . sent the two letters," the ultimate finding that respondent-father had the ability and knowledge to communicate with the children is naturally reached through the process of logical reasoning. *See In re J.N.J.*, 286 N.C. App. at 605.

Respondent-father specifically challenges the second portion of finding (g): "*The father testified that he maintained phone contact with another minor child* and he has previously sent this minor child letters so he had the ability to maintain contact despite his incarceration." We agree with respondent-father that the italicized portion of finding (g) does not qualify as a factual finding because it merely recites respondent-father's testimony absent any indication that the trial court deemed such testimony credible. *See In re A.E.*, 379 N.C. 177, 185 (2021) ("[R]ecitations of the testimony of each witness *do not* constitute *findings of fact* by the trial judge absent an indication concerning whether the trial court deemed the relevant portion of the testimony credible." (cleaned up)). However, as described above, the unitalicized portion of this finding is supported by clear, cogent, and

convincing evidence.

Finally, findings (h) and (i) are supported by petitioner-mother's testimony regarding respondent-father's conduct prior to and during his most recent incarceration. To the extent that finding (i) constitutes an ultimate finding, it is a finding naturally reached by the process of logical reasoning based upon the evidentiary facts before the trial court. Accordingly, we conclude that findings (d), (h), (i), and all but the recitation of testimony portion of finding (g) are properly supported and conclusive on appeal.

## 2. *Conclusions of Law*

Based on these factual findings, the trial court concluded that "[t]here are grounds to terminate the parental rights of Respondent father, including willful abandonment for six months" and that petitioner-mother "has proved by clear and convincing evidence the facts stated above, and Respondent's parental rights with the minor child[ren] should be permanently terminated on the grounds stated in N.C. Gen. Stat. §§7B-1111[a](1)(6) and (7)." As we have concluded that the trial court's conclusions as to N.C.G.S. § 7B-1111(a)(1) and (6) must be vacated, we address only the trial court's conclusion under N.C.G.S. § 7B-1111(a)(7). We review this conclusion of law de novo. *See In re K.N.*, 381 N.C. 823, 827 (2022).

Respondent-father argues that the trial court's conclusion that grounds existed to terminate his parental rights under N.C.G.S. § 7B-1111(a)(7) is unsupported because: (1) "the factual findings do not explain or provide the basis for

terminating Father's parental rights"; (2) "the findings did not reflect the evidence that Mother did not want Father to maintain a relationship with the children"; (3) "[c]ontrary to the court's findings about Father's abilities and intentions, if the ability to communicate and retain some type of relationship had existed during the present incarceration, Father would gladly work on parental duties and claims"; and (4) "[i]n this case, just as in *In re D.E.M.*, the findings which were supported by evidence failed to show that Father willfully abandoned Cody, Janet, and Xia." We address each argument in turn.

Respondent-father's first contention—that the supported factual findings do not provide a basis for terminating his parental rights—is without merit. Willful abandonment is a ground for terminating parental rights, *see* N.C.G.S. § 7B-1111(a)(7), and "[d]espite incarceration, a parent *failing to have any contact* [during the determinative six-month period] can be found to have willfully abandoned the child[.]" *In re D.J.D.*, 171 N.C. App. 230, 241 (2005) (cleaned up) (emphasis added).

> Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child. Willful intent is an integral part of abandonment and this is a question of fact to be determined from the evidence. If a parent withholds that parent's presence, love, care, the opportunity to display filial affection, and willfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child.

*In re S.R.*, 384 N.C. at 526 (cleaned up).

- 20 -

A parent's withholding of love and care must be voluntary and willful to support a conclusion of abandonment. Because the respondent-parent's willfulness is the touchstone of this analysis, our relevant case law distills into two questions: (1) what options did the respondent-parent have to display parental affection during the six-month period, and (2) did the respondent-parent exercise those options. If the absence of such parental affection is caused by "one parent actively thwart[ing] the other parent's ability to have a relationship with their child," either by eliminating the other parent's options or by frustrating their ability to exercise them, then a trial court does not err in concluding no grounds exist to terminate parental rights under N.C.G.S. § 7B-1111(a)(7). *Id.* at 527.

Where the respondent-parent is incarcerated during the determinative six-month period prior to the filing of the petition, "the circumstances attendant to a parent's incarceration are relevant when determining whether a parent willfully abandoned his or her child, and this Court has repeatedly acknowledged that the opportunities of an incarcerated parent to show affection for and associate with a child are limited." *In re D.M.O.*, 250 N.C. App. 570, 575 (2016). "Our precedents are quite clear—and remain in full force—that incarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision." *In re D.E.M.*, 257 N.C. App. 618, 621 (2018) (quoting *In re M.A.W.*, 370 N.C. 149, 153 (2017)).

"Although a parent's options for showing affection while incarcerated are greatly limited, a parent *will not be excused from showing interest in his child's*

*welfare by whatever means available.*" *Id.* (cleaned up). Under these circumstances a trial court must "address, in light of his incarceration, what other efforts [respondent-father] could have been expected to make to contact [mother] and the juvenile." *Id.*

Here, because respondent-father was incarcerated during the determinative six-month period, the trial court was required to enter factual findings that addressed "in light of his incarceration, what other efforts [he] could have been expected to make to contact" petitioner-mother and the juveniles. *Id.* The trial court's relevant unchallenged or supported findings are:

> d. The court finds that there was no communication between the father and the minor child, no letters, no visits, no financial support nor anything that would indicate an intent to maintain a relationship with the minor child during the relevant period.
>
> e. Looking outside the relevant period in relation to the father's intent, the court finds that the father sent $30.00 to pay for the minor's shoes in 2018 and that he sent two letters in 2022.
>
> f. The mother had the same address where the father dropped off the $30.00 and sent the two letters and the mother had the same phone number since the father has been incarcerated.
>
> g. The father's incarceration may have been an impediment to the father's ability to reach out and maintain a relationship, however, the father clearly had the ability and knowledge to communicate with the minor child. . . . [H]e has previously sent this minor child letters so he had the ability to maintain contact despite his incarceration.

These findings—though by no means exhaustive, comprehensive, or even thorough—adequately address: (1) in light of his incarceration, what options respondent-father had to show interest in his children's welfare, and (2) whether respondent-father exercised those options. The trial court acknowledged that respondent-father's options were limited due to his incarceration but that he could have continued to send letters as he had previously. Because respondent-father failed to exercise that option, he failed to "*show[ ] interest in his child's welfare by whatever means available,*" *In re D.E.M.*, 257 N.C. App. at 621 (cleaned up), and the trial court's factual findings support its conclusion that grounds existed to terminate respondent-father's parental rights under N.C.G.S. § 7B-1111(a)(7).

Respondent-father's second contention, that "the findings did not reflect the evidence that Mother did not want Father to maintain a relationship with the children," is misplaced. While petitioner-mother's statements that she had "tried to prevent him from seeing the children . . . when he first got incarcerated" and that she was "not willing to put money on [his] books to speak to the kids," could support a finding that petitioner-mother did not want respondent-father to maintain a relationship with the children, the trial court was not required to make any such finding. Whatever petitioner-mother *wanted* is largely irrelevant to resolving the issue of whether respondent-father willfully abandoned his children in the six-month period prior to the filing of the petition. *See* N.C.G.S. § 7B-1111(a)(7). Because petitioner-mother testified that she "never stopped him from writing" and "never

stopped the children from writing," her admissions that she "tried to prevent him from *seeing* the children" and stopped funding his prison account do not amount to "actively thwarting the other's parent's *ability* to have a relationship with their child." *In re S.R.*, 384 N.C. at 527 (emphasis added).

Respondent-father's third argument, that "if the ability to communicate and retain some type of relationship had existed during the present incarceration, [he] would gladly work on parental duties and claims," similarly amounts to a contention that petitioner-mother actively thwarted his ability to communicate and retain a relationship with his children. The clear, cogent, and convincing evidence and the trial court's supported factual findings demonstrate that respondent-father: (1) knew the children's address, (2) was capable of sending letters to the children at that address, (3) sent at least two letters to the children since his 2018 incarceration began, and (4) did not send letters or otherwise attempt communication with the children in the determinative six-month period. "Although a parent's options for showing affection while incarcerated are greatly limited, a parent *will not be excused from showing interest in his child's welfare by whatever means available.*" *In re D.E.M.*, 257 N.C. App. at 621 (cleaned up).

Finally, respondent-father argues that "[i]n this case, just as in *In re D.E.M.*, the findings which were supported by evidence failed to show that Father willfully abandoned Cody, Janet, and Xia." We disagree.

In *In re D.E.M.*, this Court vacated an order terminating the respondent's

parental rights in part because the trial court's findings did "not address, in light of his incarceration, what other efforts [respondent] could have been expected to make to contact [the mother] and the juvenile." *Id.* In doing so, this Court relied on our precedent in *In re D.M.O.* where we vacated and remanded a similar order in part because the trial court "made no findings indicating that it considered the limitations of respondent-mother's incarceration, or that respondent-mother was able but failed to provide contact, love, or affection to her child while incarcerated." *Id.* (quoting *In re D.M.O.*, 250 N.C. App. at 578).

As described in detail above, the orders here do not suffer from the same defect present in the orders in *In re D.E.M.* and *In re D.M.O.* The trial court's findings expressly addressed respondent-father's incarceration, the limitations such incarceration placed upon his ability to show interest in his children, and the options he could have—but did not—exercise to show such interest. Accordingly, we affirm the trial court's conclusion that grounds existed to terminate respondent-father's parental rights for willful abandonment under N.C.G.S. § 7B-1111(a)(7).

## V.    Conclusion

The trial court's findings do not support its conclusions that grounds existed to terminate respondent-father's parental rights under N.C.G.S. § 7B-1111(a)(1) or (6) and we therefore vacate those portions of the three orders. However, because the trial court's supported factual findings in turn support its conclusion that grounds existed to terminate respondent-father's parental rights under N.C.G.S.

§ 7B-1111(a)(7), we affirm those portions of the three orders.

VACATED IN PART, AFFIRMED IN PART.

Judges HAMPSON and GORE concur.