An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-823

Filed 20 May 2026

Gaston County, No. 24JT000119-350

IN THE MATTER OF: P.G.S.

Appeal by respondent-father from order entered 25 June 2025 by Judge Edgar F. Bogle in District Court, Gaston County. Heard in the Court of Appeals 23 April 2026.

> *McIlveen Family Law Firm, by Sean F. McIlveen, for petitioner-appellee-mother.*
>
> *Patricia M. Propheter for respondent-appellant-father.*

STROUD, Judge.

Because the unchallenged findings of fact support the trial court's conclusion of law that respondent-father willfully abandoned Pam[1] under North Carolina General Statute Section 7B-1111(a)(7), we affirm the trial court's order terminating his parental rights.

## I.    Procedural Background

---

[1] Under North Carolina Rule of Appellate Procedure 42(b), the parties have agreed to refer to the minor child as "Pam," a pseudonym.

On 5 June 2024, petitioner-mother filed a verified petition to terminate respondent-father's parental rights alleging willful abandonment under North Carolina General Statute Section 7B-1111 since July of 2022, about two years before the petition. On 19 November 2024, Father filed a response denying most of the petition's material allegations. On 4 February 2025, Father filed a verified amended response continuing to deny most of the material allegations. On 25 June 2025, the trial court entered an order terminating Father's parental rights. Father appeals.

## II. Abandonment

Father's only issue on appeal is whether "[t]he trial court erred when it terminated . . . [his] parental rights to [Pam] based on abandonment where the findings of fact and conclusions of law were not supported by the evidence nor the law."

### A. Standard of Review

Father's argument addresses only the trial court's adjudication of abandonment and not disposition or the best interests of Pam. Thus, we consider the standard of review at the first stage of termination:

> There are two stages involved in a termination of parental rights proceeding. These are the adjudication stage and the dispositional stage. A different standard of review applies to each stage. At the adjudication stage, the party petitioning for the termination must show by clear, cogent, and convincing evidence that grounds authorizing the termination of parental rights exist. If a trial court's finding of fact is supported by clear, cogent, and convincing evidence, it will be deemed conclusive even if the record

contains evidence that would support a contrary finding. We review whether the findings of fact support the conclusions of law, and conclusions of law are reviewed de novo.

*In re S.R.*, 384 N.C. 516, 520, 886 S.E.2d 166, 171 (2023) (citations, quotation marks, and brackets omitted).

## B. Findings of Fact

Father's argument conflates his challenges to findings of fact and conclusions of law but we address them separately. First, Father challenges only three findings of fact.[2] Father contends findings of fact 38 and 39 are conclusions of law, and he addresses them as such because he does not claim they are not supported by the evidence. *See id.* Furthermore, we consider findings of fact and conclusions of law based on substance, regardless of label. *See In re J.S.*, 374 N.C. 811, 818, 845 S.E.2d 66, 73 (2020) ("We are obliged to apply the appropriate standard of review to a finding of fact or conclusion of law, regardless of the label which it is given by the trial court.").

### 1. Findings of Fact 38 and 39

Finding 38 states, "[Father]'s actions are wholly inconsistent with a desire to maintain custody of the child." But this finding is not a conclusion of law; a statement as to Father's desire is a statement of fact. *See Dunevant v. Dunevant*, 142 N.C. App.

---

[2] Father also notes that in findings of fact 22 and 35 "the emphasis seems to be placed" on whether he took steps to contact Pam or Mother directly instead of through his attorney, but he has not argued these findings were not supported by the evidence.

169, 173, 542 S.E.2d 242, 245 (2001) ("Findings of fact are statements of what happened in space and time." (citation omitted)). Finding 39 states, "The Court finds by clear, cogent, and convincing evidence that [Father] abandoned [the] Minor Child for a period of six consecutive months prior to the filing of this action defined in N.C.G.S. §7B-1111(a)(7)." "Willful abandonment by "a parent's actions is a question of fact for the trial court." *In re J.D.C.H.*, 375 N.C. 335, 338, 847 S.E.2d 868, 872 (2020) (quotation marks and citations omitted). Here, the trial court was stating the standard of review it used to find the question of fact. *See In re D.R.B.*, 182 N.C. App. 733, 739, 643 S.E.2d 77, 81 (2007) ("The trial court must affirmatively state in its order that its findings of fact at the adjudicatory stage of the termination proceedings are based upon clear, cogent, and convincing evidence."). Accordingly, these findings are not in error.

### 2. Finding of Fact 33

The remaining challenged finding of fact is finding 33:

> 33.   [Father] did not act in a man[ner] to be a part of Minor Child's life from December 05, 2023 through June 6, 2024. Although there were *some efforts made by third parties, specifically those efforts indicated . . . by [Father's attorney],* only their actions were actions taken to be a part of [the] Minor Child's life. [Father] *took no direct actions* to be part of [the] Minor Child's life.

(Emphasis added.)

Father does not argue that finding 33 is not supported by the evidence; rather,

he asserts the trial court erred by disregarding his efforts to contact Pam or Mother through third parties instead of making direct contact with them. Father contends disregarding third party efforts, particularly those of his attorney who was retained to obtain visitation for Father, "is not the proper standard" under "prevailing case law" for the trial court to use. Father relies upon cases such as *In re B.R.L.*, 379 N.C. 15, 863 S.E.2d 763 (2021); *In re C.K.C.* 263 N.C. App. 158, 822 S.E.2d 741 (2018); and *In re D.T.L.*, 219 N.C. App. 219, 722 S.E.2d 516 (2012), and primarily distinguishes the case *In re C.B.C.*, 373 N.C. 16, 20, 832 S.E.2d 692, 768 (2019).

But in *B.R.L., C.K.C.*, and *D.T.L.*, this Court reversed determinations of willful abandonment because the parents had filed for custody or visitation modification during the relevant six-month time period before the petition was filed. *See B.R.L.* 379 N.C. at 20-23, 863 S.E.2d at 768-70 ("Additionally, respondent filed a pro se motion for review to increase her visitation with Billy one month before the termination petition was filed."); *C.K.C.*, 263 N.C. App. at 161–65, 822 S.E.2d at 744-46 ("In this case, Petitioner-grandmother filed her petition to terminate Respondent-father's parental rights on 16 November 2017; therefore, the relevant six-month period was from 16 May 2017 to 16 November 2017. During that period of time, on 19 October 2017, Respondent-father filed a motion in the cause seeking to modify the consent order and requesting that he be granted the 'sole care, custody, and control' of Cooper and Wes. Respondent-father's attempt to gain custody of Cooper and Wes demonstrates that he did not intend to forego all parental duties and relinquish all

parental rights with regard to the juveniles. His motion thoroughly averts the trial court's determination that he willfully abandoned Cooper and Wes."); *D.T.L.*, 219 N.C. App. at 222-23, 722 S.E.2d at 518-19 ("Here, the trial court's ultimate finding of fact regarding the ground of abandonment states that respondent has failed to maintain contact with the Juveniles since March 2007. He has wil[l]fully abandoned the Juveniles. However, this ultimate finding is not supported by clear, cogent and convincing evidence. Petitioner filed her petition to terminate respondent's parental rights on 8 February 2011, thus the relevant six-month statutory period was from 8 August 2010 to 8 February 2011. Respondent was released from incarceration in September 2010, and on 6 October 2010, petitioner obtained a domestic violence protection order which prohibited respondent from contacting either petitioner or the juveniles. On 19 November 2010, respondent filed a custody action against petitioner in which he asked the court to award primary custody to petitioner and grant him secondary custody and reasonable and liberal visitation. Respondent's institution of a civil custody action undermines the trial court's finding and conclusion that he willfully abandoned the juveniles." (brackets and quotation marks omitted). Thus, citing one of Father's noted cases, regarding the effect of a parent's institution of a custody proceeding or modification of custody and visitation, the filing happened during "the relevant six month period[,]" *C.K.C.*, 263 N.C. App. at 161, 822 S.E.2d at 744, *before* the filing of the petition for termination of parental rights. As to *C.B.C.*, the case Father attempts to distinguish from his own regarding a determination of

willful abandonment that was affirmed, we agree with Father that the father in that case did not seek further visitation or a modification of custody. 373 N.C. at 23-24, 832 S.E.2d at 697.

Here, Father did not file for visitation until *after* the petition for termination was filed. We also note that all cases are very dependent on the facts of that case, and the trial court has broad discretion in making an assessment of a parent's reasons for a lack of contact and whether the parent's lack of action reflect a willful intent to abandon the child. *See B.R.L.*, 379 N.C. at 18, 863 S.E.2d at 767 ("While the question of willful intent is a factual one for the trial court to decide based on the evidence presented, and while the trial court's factual determination is owed deference, it remains our responsibility as the reviewing court to examine whether the evidence in the case supports the trial court's findings and whether, as a legal matter, the trial court's factual findings support its conclusions of law[.]" (citation omitted)). Further, Father cites no requirement for the trial court to consider efforts by a third party instead of the parent in a particular way. The trial court therefore did not err by its mention of Father's own "direct actions" instead of the efforts of Father's attorney.

### 3. *Unchallenged Findings of Fact*

Further, Father's argument is undermined by unchallenged and thus binding finding 36:

> 36.  [Father] was informed of his right to file a lawsuit for visitation with Minor Child in January of 2024. [Father] did not file any lawsuit for custodial rights

> until after this action was filed. There was no existing court order, 50-B domestic violence action, or criminal case that would have prevented [Father] from having contact with either the [Mother] or Minor Child.

*See In re K.H.*, 281 N.C. App. 259, 266, 867 S.E.2d 757, 762 (2022) ("Unchallenged findings of fact are deemed supported by the evidence and are binding on appeal.").

The remaining unchallenged findings show Father was not present at Pam's birth in 2016, and until she was 18 months old, he saw the child sporadically, as arranged by Mother. After 18 months, Father had no contact with the child until 2022 despite Mother being "willing and active in facilitating [Father's] visits"; Father spent two days with Pam in April of 2022. In December 2022, Father moved to Florida with no notice to Mother, although he knew how to contact Mother. One single day in October 2022, Father saw Pam. Father did not try to contact Pam or Mother, despite having the contact information, in the six months before the filing of the petition.

In late 2023, Mother filed a complaint seeking child support, and Father questioned paternity and retained an attorney. In the six months before the petition was filed, nothing prevented Father from contacting Mother or Pam. Father testified he did not contact Mother in the six months before the petition. Pam called Father in November of 2023, and after she identified herself, Father hung up. Father neither called Pam nor sent gifts or texts to ask about her in the six months preceding the petition. Father was informed of his right to visitation in January of 2024, but he did

not file for it. Father "withheld his presence, his love, his care, the opportunity to display filial affection, and willfully neglected to lend support and maintenance" for Pam. Father's "actions are wholly inconsistent with a desire to maintain custody of" Pam. The trial court found by clear, cogent, and convincing evidence that in the six months before the petition, Father had abandoned his child under North Carolina General Statute Section 7B-1111(a)(7). Ultimately, the trial court found and concluded that under North Carolina General Statute Section 7B-1111(a)(7) Father had "willfully abandon[ed the] Minor Child for a period of at least six consecutive months preceding the commencement of this action[.]"

### 4. *Father's Evidence*

Here, rather than challenge the remaining findings that are the basis of the trial court's conclusion of law as to abandonment, Father contends the trial court did not find the facts favorable to him, based on his evidence. Father argues that

> the undisputed facts show that . . . [Father] was actively paying child support and actively pursuing civil legal action to assert visitation rights during the six months preceding the filing of the Petition; as well as had made many attempts outside of the six-month period to maintain a relationship with Pam over the years.

The trial court's findings note that Mother filed a child support action in late 2023 and obtained a child support order. The findings also note that Father's attorney "testified that he would have told [Father] to ask [Mother] for visitation with . . . [Pam]. [Father] did not do so." Father's attorney also "sent a text message to

[Mother] in February 2024" to ask about visitation with Pam, and she "responded that [Father] could always have visitation with . . . [Pam] but that he never asked." Neither Father nor his attorney followed up on this message.

The trial court made sufficient findings of fact to support its conclusions of law. But the trial court, contrary to Father's arguments, also did not ignore or overlook his evidence regarding his efforts to obtain visitation through his attorney or his filing for visitation, even though he filed after Mother had filed the petition for termination. The trial court's findings demonstrate that it considered the weight and credibility of all the evidence but considered Father's efforts as too little and too late. *See Knuckles v. Simpson*, 293 N.C. App. 260, 268, 900 S.E.2d 336, 342 (2024) ("In a bench trial, a trial court's findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain a finding to the contrary." (citation and quotation marks omitted)).

## C. Conclusion of Law

While Father's argument regarding the trial court's conclusion of law is mixed with his arguments regarding the findings of fact, we also note that the trial court repeats Finding of Fact 39 in its conclusions of law: "The Court finds by clear, cogent, and convincing evidence that [Father] abandoned Minor Child for a period of six consecutive months prior to the filing of this action as defined in N.C.G.S. § 7B-1111 (a)(7)." Father argues the trial court erred by concluding he willfully and purposefully abandoned Pam since he had made efforts to obtain visitation with her.

*In re L.M.M.*, our Supreme Court explained that "willful intent" is required for abandonment:

> [a]s used in N.C.G.S. § 7B-1111(a)(7), abandonment requires a purposeful, deliberative and manifest willful determination to forego all parental duties and relinquish all parental claims to the child. The willful intent element is an integral part of abandonment and is determined according to the evidence before the trial court. This Court has repeatedly held that if a parent withholds that parent's presence, love, care, the opportunity to display filial affection, and willfully neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child.

375 N.C. 346, 349, 847 S.E.2d 770, 773 (2020) (citations and quotation marks omitted). But as we have already determined that the trial court's findings were supported by the evidence, and those findings

> would support the ultimate finding of fact and eventual conclusion of law that the ground of abandonment existed to permit the termination of [Father]'s parental rights to [Pam]—that [Father]: did not visit with [Pam]; did not provide [Pam] with any correspondence, gifts, affection, or support; did not in any other manner evince a desire to engage in parental duties or act in a parental manner[.]

*In re A.A.*, 381 N.C. 325, 337, 873 S.E.2d, 496, 507 (2022). We cannot reconsider the trial court's assessment of the weight or credibility of the evidence, and the findings of fact support the trial court's conclusions and ultimate disposition. *See generally Knuckles*, 293 N.C. App. at 268, 900 S.E.2d at 342. Accordingly, we affirm.

### III.    Conclusion

We affirm the trial court's order terminating Father's parental rights.

AFFIRMED.

Chief Judge DILLON and Judge MURRY concur.

Report per Rule 30(e).